No. 3504

Second Circuit

---

BUCKLEY v. FEATHERSTONE GARAGE, INC.

---

(July 1, 1929. Opinion and Decree.)
(November 4, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

---

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendant, appellee.

ODOM, J. This is a damage suit growing out of a traffic accident which occurred in the daytime at the intersection of Texas and Edwards Streets, in the City of Shreveport. The plaintiff was walking east on the north side of Texas Street and, as she stepped out into Edwards Street, which intersects Texas at right angles, she was struck and injured by a taxicab belonging to the defendant, said cab going north on Edwards Street. Plaintiff specifically alleged that she was guilty of no negligence, that she entered the crossing on the proper light signal, but charges that the driver of defendant's taxicab was negligent in several respects i. e., that he was driving at a fast and reckless rate of

speed, that he entered the intersection on the wrong traffic signal, that he swerved to the left to avoid striking another car, that he failed to keep a proper lookout for pedestrians, that the brakes on the taxicab were not applied, or if they were, they failed to take effect, and that the driver made no effort whatsoever to avoid striking her after entering into the intersection.

Defendant, in answer, specifically denied all acts of negligence charged against it, and set up that plaintiff's injuries were due solely to her own fault and negligence, and especially charged that she herself entered the intersection on the wrong traffic signal.

The district judge held against plaintiff and rejected her demands. She has appealed.

OPINION.

The accident took place in daylight at the intersection of Texas and Edwards Streets in the city of Shreveport where the city maintains a traffic light signal for the purpose of regulating and controlling traffic at the crossing. Each of the litigants has charged the other with negligence in disregarding the traffic signal lights and the ordinance of the city which prescribes the duties and obligations of those using the streets at intersections where these traffic light signals are maintained. The question of negligence depends mainly upon whether these signals and the ordinance of the city were violated.

In the operation of these signals, three different colored lights are used—red, yellow and green—each light being flashed on through a different dial in the same rectangular box suspended over the center of the intersection, the lights being operated by electricity. Across the dial over the red signal is the word "stop;" across the dial over the yellow signal is the word "caution"; and across the dial over the green signal is the word "go." All of which means, as is well understood in the city, that when either a pedestrian or one driving a vehicle of any kind reaches an intersection where the red light is on, he must stop, and when the green light is on, he may go forward. The changing of these lights is preceded by the ringing of a signal bell, which can always be heard over the noise of the traffic. The moment the bell begins to ring, the red or green light, as the case may be, goes off and the yellow or "caution" light is flashed on. The bell rings for five seconds and the caution light remains on for that time. When the bell ceases, the yellow or caution light goes off and the red and green lights, showing at right angles to each other, are flashed on and remain on for 30 to 40 seconds. Under the city ordinance, no one is permitted to enter the intersection, except when the green light is on. The interval of five seconds between the moment the bell begins to ring and the caution light goes on, and the moment the bell ceases and the caution light goes off, is allowed to enable all those, both pedestrians and drivers of vehicles who have entered the intersection on the green signal and are caught therein when the signal for change is given, to clear the intersection. In other words, the moment the signal for a change of lights is given by the ringing of the bell and the flashing on of the yellow or caution light, all traffic must halt, except that which is then within the intersection. It is a violation of the traffic ordinance and rules to enter the intersection while the caution light is showing.

Disclaiming any negligence on her part, plaintiff alleges that she entered on the green light and that defendant's driver entered the intersection on the red signal.

The district judge, in an exhaustive written opinion after a most critical analysis of all the testimony, held that plaintiff had failed to prove by a preponderance of the testimony that she had entered the intersection on the green signal, but held that it was proved beyond question that defendant's driver entered on the proper signal. We go further than did the district judge and hold that the testimony shows that the plaintiff entered the intersection, not on the green, but on the caution signal.

Plaintiff was going east on the north side of Texas Street; defendant's driver was going north on Edwards Street. She was asked to tell just how the accident occurred, and she said:

"Well, the signal bell rang, which gave me the right to cross over Edwards Street, and there were quite a number of people crossing there at the same time, and I happened to be the first one to step off of the curb, and I heard the brakes grinding, and looked up, as the wheel caught, of course, I thought it was right on me * * *."

She later said more than once that she did not enter until the green signal light came on, but the latter statements were made in response to suggestions—if not leading questions by her counsel. The above quoted statement was made in answer to one of the first questions propounded by her counsel. Plaintiff was then questioned at length concerning her injuries and the present state of her health, after which her counsel again interrogated her with reference to the accident. On page 20 of the testimony, he asked her:

"Now, Mrs. Buckley, when you attempted to cross Edwards Street, just prior to the accident, was the green light on—what signal was on?"

She answered:

"The green signal, giving me the right to cross Edwards Street."

The above testimony creates the decided impression that she was prompted in saying that the green signal was on when she entered the intersection, by the suggestions made by her counsel.

Furthermore, plaintiff was asked if she saw a woman acquaintance on the opposite side of the street, crossing towards her, and she said:

"* * * I said that I saw someone over on the other side that attracted my attention, and I remember distinctly that she moved towards me, at the same time that I moved off of my side of the curb."

The lady referred to was Mrs. Cross, who was called as a witness for plaintiff. Mrs. Cross testified that she was on the opposite side of the street, waited for the green signal, and that as she was crossing, she met plaintiff about the center of the street. Mrs. Cross' testimony corroborates that of plaintiff, but for one fact which is undisputed, and that is that plaintiff was delayed in crossing the street by her contact with the automobile which shoved her slightly and caused her to sit for a moment on the bumper, after which she proceeded on her way across the street. If the two had entered the intersection at the same time, they would have met near the center; assuming that they were walking at the same rate of speed, provided that neither was delayed. But plaintiff was delayed—still they both say they met near the center of the street. So that, if Mrs. Cross started on the green

signal, and she says she did, plaintiff must have started before the green signal came on, and that is what must be inferred, we think, from plaintiff's opening statement:

"Well, the signal bell rang, which gave me the right to cross over Edwards Street."

There is no other testimony in the record directly touching the point. But the testimony of McKoin, the cabdriver, taken in connection with some of the physical facts, corroborates the theory that plaintiff entered the street before the green light came on. McKoin testified that he entered Texas Street, going north on Edwards Street, while the green light was on, and that the signal bell rang and the caution light came on when he was one-third of the way across Texas. Texas Street is 75 feet wide from curb to curb. He was, therefore, 50 feet from where the accident occurred. He was going about 15 miles per hour, or approximately 20 feet per second. But, when McKoin reached a point near the north edge of the street, he got behind another car which was proceeding in the same direction, but more slowly, and his speed was slightly changed on this account. Taking these figures and estimates as being approximately correct, it took the cab about three seconds to go from the point where it was when the signal bell rang and the caution light came on, to the point where the accident took place, and McKoin says the bell stopped ringing and the green signal to cross Edwards Street came on after he struck plaintiff. In other words, he had cleared the crossing before the Edwards Street green signal came on. Admittedly, when he reached the north side of Texas Street, or the "white lines," plaintiff was out in the crossing. She says she had made about three steps when she heard the grinding of brakes, looked up, and the cab was almost upon her. All the witnesses say that the cab stopped after striking plaintiff at the "white lines" across Edwards, or on che passageway marked off for pedestrians.

The testimony of McKoin on this point is in line with that of Mrs. Cross, who says that she entered the street from the opposite side when the green light came on, and that she met plaintiff in the middle of the street after the accident and that she saw the cab there. Our conclusion is, and we hold, that plaintiff was standing on the curb waiting for the signal to go, and that as soon as the bell began to ring and the caution light came on, she entered the street, without waiting for the green light to come on. As a matter of law, that was negligence on her part.

These traffic signals are operated for the safety and protection of those who inhabit and use the streets. They are used to help—not to hinder traffic. The city ordinance regulating traffic at crossings where these signals are used prohibits an entrance into a street crossing, except on a green signal. Plaintiff violated the ordinance, and, it is generally held that a violation of the traffic regulations of a municipality, so far as they embody express commands, is negligence per se.

It is unfortunately true that, notwithstanding the plain letter of the ordinance prohibiting it, and that there is written in bold type across the yellow dial the word "caution," people do constantly enter crossings the moment the signal bell begins to ring and while the caution light is on. These caution signals are intended to subserve the same purpose as a "stop, look and listen" sign at a railroad crossing—still people continue to "rush the lights" and "rustle the trains." But, when they do so they are guilty of gross negli-

gence. We therefore find, as did the district judge, that defendant's driver entered the intersection on the proper or green signal. It was therefore not only his right, but his duty, to clear the crossing after the signal for the light change was sounded, and he was guilty of no negligence in that respect.

Plaintiff alleged that the driver of the cab was negligent in that he was going at a fast and reckless rate of speed, and that the brakes were either defective or were not applied. The testimony does not sustain these charges. The cab was going about 15 miles an hour, which is not unusual or excessive considering that it had entered on the proper signal, and it was the driver's duty to clear the crossing within the five-second period. The brakes were in perfect condition and the cab was stopped within a few feet after they were applied.

It is alleged further that the driver was negligent in swerving his car to the left in order to avoid a collision with another car. That allegation is not proved. The driver did swerve to the left near the center of Texas Street, but the traction company was repairing its double track in the center of Texas Street and had closed the right-hand side of the driveway, which made it necessary for all vehicles going north on Edwards to drive to the left.

The other points of negligence charged are that the driver of the cab failed to keep a lookout for pedestrians crossing Edwards Street and that he made no effort whatsoever to avoid striking her "after entering the intersection." These two involve the last clear chance doctrine which counsel strenuously urge in plaintiff's behalf, as well as the duty which the driver of a vehicle owes to a pedestrian who enters

an intersection on the wrong light signal, conceding that the vehicle entered on the proper signal. Counsel for plaintiff say in brief:

"From our viewpoint, it is immaterial whether plaintiff entered the intersection properly or improperly as to signals, because defendant's liability is clearly established in the doctrine of the last clear chance. For this reason, we shall not discuss the evidence as to plaintiff's negligence."

Now the testimony shows that plaintiff entered the street on the wrong signal and was, therefore, wrongfully in the street at the time she was struck and was therefore guilty of negligence. The testimony further shows that the driver entered on the right signal and was therefore rightfully therein and had the right of way. Counsel for plaintiff, in oral argument and in brief, say that the district judge held that under such circumstances the driver owed plaintiff no duty at all—that it was not his duty to look ahead, the result of such ruling being to deprive plaintiff of her right to recover under the last clear chance doctrine. We do not think the district judge intended to hold or did hold that by reason of the fact that the driver of the car was rightfully in the street and had the right of way, he was absolved from all duty to keep a lookout ahead and to avoid, if reasonably within his power to do so, injury to those who might be wrongfully therein. There may be some expressions in the opinion which might so indicate, but his opinion as a whole does not so impress us.

An automobile moving forward is a dangerous instrumentality to those who happen to be in front of it, and, in our opinion, the duty of the driver to look ahead never ceases. Even though rightfully on the highway and the right of way be his,

he must still look. In a city where traffic is controlled by the signal light system, neither pedestrians nor vehicles are permitted to enter an intersection on the wrong signal, and to do so is negligence. But the driver of a vehicle who is rightfully in the intersection owes a duty to those who may be negligently therein, and that *duty is not only to avoid injuring them* when and if their peril is discovered, if he can reasonably do so, but further, to use due diligence to discover their presence. It has been held that a railroad company owes no duty to trespassers, except to use due care to avoid injuring them after their presence on the right of way has been discovered. But those who inhabit public streets and highways are not trespassers. They have a right to be there and, even though they negligently exercise that right, yet the driver of an automobile owes to them the duty of using due care to discover their presence.

Under the traffic light system, a motorist who is proceeding under the proper signal should not be held to that same high degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed, and he is not required to anticipate that pedestrians will violate the ordinances and rules and enter a *crossing on the wrong signal.* The danger at such crossings is less than if there were no such signals, and therefore, less care is exacted. A motorist must use such diligence and care as is commensurate with the dangerous character of the locality. But even though the danger be slight, he is not absolved from the duty to look ahead. We said in Jones vs. Rock

Island Ry. Company, 4 La. App. 457 (464):

"The precautions to be adopted and the steps to be taken in aid of safety increase as the danger of accident and injury increases."

That was a railroad case, but the same rule applies to motorists.

In a comparatively recent case, that of Ivy vs. Marks, 87 So. 813 (14 A. L. R. 1173), the Supreme Court of Alabama held that the fact that a pedestrian is crossing a street diagonally at a place other than a street intersection, which is forbidden by ordinance under penalty, does not relieve the driver of an automobile upon a highway from the duty to maintain a lookout for him.

Roy et ux. vs. Israel, 3 La. App. 311;

Burvant et ux. vs. Wolfe, 126 La. 787, 52 So. 1023; see notes in 14 A. L. R. 1176.

Under the last clear chance doctrine, an injured person may recover in a personal injury suit even though he has been guilty of negligence in exposing himself to danger, if the defendant knew of such danger and could have avoided the injury by the exercise of ordinary care, and fails to do so.

Grand Trunk Ry. Co. vs. Ives, 144 U. S. 408, 36 L. Ed. 485 (U. S. Sup. Ct. Rep. Vol. 12, p. 679), 20 R. C. L. 138;

29 Cyc. 530;

McClanahan vs. V. S. & P. Ry. Company, 111 La. 781, 35 So. 902;

McGuire vs. V. S. & P. Ry. Company, 46 La. Ann. 1543, 16 So. 457;

Harrison vs. Louisiana Western R. Company, 132 La. 761, 61 So. 782;

Jones vs. Mackay Tel. Cable Co., 137 La. 121, 68 So. 379.

Plaintiff was negligent in going into the crossing as she did. She exposed herself to danger and placea herself in a position of peril. Even so, if defendant's driver knew of such danger or if by the exercise of reasonable care and prudence he could have seen plaintiff in her position of peril and could have avoided the injury and failed to do so, defendant would be liable.

But there is no room here for the application of the last clear chance rule. The driver of the taxicab had no last clear chance to avoid striking plaintiff. She stepped from the curb into the street almost immediately in front of the moving car and had taken only about three steps out into the street when she was struck. She herself says that from the time she stepped from the curb until she was struck was a matter of seconds. It was almost a momentary happening. Counsel for plaintiff argue that it was the duty of the driver to be looking ahead, and that, we think, is true. But, if he had been looking ahead, as he says he was, and had been watching both the street ahead of him and the curb, he would not have seen plaintiff in the street, but would have seen her and others standing on the curb waiting for the signal to go. There was no occasion for him to slacken his speed or apply the brakes sooner than he did, because there were no pedestrians in the street ahead of him and he had the right of way, nor were there any pedestrians moving towards the crossing. But, almost simultaneously with his reaching the place where the collision happened, plaintiff stepped out in front of the car. It is impossible to compute the small fraction of time that it took plaintiff to make three steps from the curb to where she was struck—yet, that was the length of time which elapsed from the moment she entered the crossing until the collision took place, and that was exactly the period of time the driver had in which to discover her peril after she started across. If he had seen plaintiff the moment she stepped out, he had no time to stop before reaching her, because it necessarily took some fraction of time for him to use his muscles and apply the brakes and some fraction of time for the brakes to take effect. The brakes were applied before the car reached plaintiff. She says she did not look and did not see the car but heard the grinding of the brakes, which caused her to look up, and then the car was almost upon her.

The judgment appealed from is correct and is accordingly affirmed, with all costs in both courts.