## MANUEL v. BRADFORD.

### No. 16231.

Court of Appeal of Louisiana. Orleans.
March 23, 1936.

Pierre D. Olivier, Geo. E. Konrad, and H. W. & H. M. Robinson, all of New Orleans, for appellant.

H. W. Kaiser and John H. Hammel, Jr., both of New Orleans, for appellee.

JANVIER, Judge.

At about 6:40 o'clock on the morning of April 11, 1935, there occurred at the corner of Canal street and Carrollton avenue in New Orleans, a collision between a Studebaker automobile owned and operated by Henry B. Bradford and a Chrysler car owned and driven by Theodore D. Manuel. Manuel states that he was driving down Carrollton avenue and that, as he crossed Cleveland avenue, one block above Canal street, he noticed that the traffic semaphore signal light at Canal street had just changed from red to amber, and that he proceeded at a speed of about 20 miles an hour and had reached a point about 75 or 100 feet from the intersection of Canal street when the light changed from amber to green; that he proceeded to Canal street and was crossing its upper roadway when his car was run into violently from the left by the Studebaker of Bradford, which was crossing Carrollton avenue, although the semaphore signal light facing it was red when it entered the intersection. Manuel also states that Bradford was operating his Studebaker at an excessive rate of speed, which speed he estimates at about 30 or 35 miles per hour. He alleges that he sustained physical injuries as a result of the impact, and that his car was rather badly damaged, and he fixes his total loss, in physical injuries and property damage, at $613.04. In order that the matter might be tried in the First city court of New Orleans, he entered a remittitur in the sum of $313.04, and prayed for judgment for only $300.

Bradford denies that he was in any way at fault, and alleges that he entered the intersection when the light facing him was green, and that, as he was proceeding across "at a leisurely rate," the light changed to yellow, or amber, as he "was half way on the far or river side roadway," which was the roadway on which Manuel's car was approaching, and that at that moment, driving his Chrysler at a very high rate of speed and without allowing time for him (Bradford) to complete the crossing of the intersection, Manuel "dashed into the right front fender and right front wheel" of his car.

Alleging that the accident had resulted solely because of the negligence of Manuel in the particulars alleged, Bradford,

by reconventional demand, prayed for judgment against Manuel in the sum of $103.60.

In the First city court there was judgment in favor of Manuel in the sum of $213.04 and the reconventional demand of Bradford was dismissed. He has appealed.

The two thoroughfares involved cross at right angles. They are very wide and much used arteries of traffic; each having two broad roadways separated·by an unusually wide neutral ground. Between the two driveways of Carrollton avenue and immediately adjacent to the upper roadway of Canal street, there is a small building which, to some extent, obstructed the vision of the two drivers as they approached the point at which the two vehicles met.

■ The evidence leaves no doubt in our minds that Bradford, in crossing Carrollton avenue, entered the first roadway after the signal light had changed to red. He denies this, but we find the contrary proof so strong that it must prevail on this point. Julius J. Lennox, who was crossing Canal street on the other side and going in the direction opposite from that in which Manuel was traveling, when asked what was the color of the light facing the Studebaker, said "it was red."

John Bergens, another disinterested witness, who was standing on a corner on the lower side of Canal.street, said: "The minute of the accident, the minute I saw the two cars, I saw the lights and it was green for the Chrysler on Carrollton Avenue and red for the cars on Canal Street."

These two witnesses, both disinterested, are the only ones who saw the accident, except, of course, the two parties who are involved, and we cannot but feel, in view of this numerical preponderance and in view, also, of the finding of our brother below, that, as we have said, Bradford entered the intersection after the traffic signal had turned against him.

■ It is argued by counsel for Bradford that even if he was at fault in that particular, still there should be no recovery by Manuel because it should have been obvious to him that Bradford did not intend to stop and that it would be dangerous for him to attempt to cross in front of the oncoming Studebaker.

We have given most careful consideration to this argument because we realize that the mere fact that an automobile driver is favored at such an intersection with the "right of way" resulting from the fact that a green light is facing him does not relieve him from all duty and responsibility and does not exonerate him from blame if there is approaching him on the intersection roadway another vehicle, in plain view, the driver of which, either because of high speed, or obvious inattention, is manifestly unable to stop. If those conditions prevail, so long as the driver who is favored by the "right of way" still has it within his power to stop, he must do so and he cannot rush out into the path of danger merely because the "right of way" is with him.

In Buckley v. Featherstone Garage, Inc., 11 La.App. 564, 123 So. 446, 450, Mr. Justice Odom, now of the Supreme Court and then the organ of that court, said: "In our opinion, the duty of the driver to look ahead never ceases. Even though rightfully on the highway and the right of way be his, he must still look. In a city where traffic is controlled by the signal light system, neither pedestrians nor vehicles are permitted to enter an intersection on the wrong signal, and to do so is· negligence. But the driver of a vehicle who is rightfully in the intersection owes a duty to those who may be negligently therein, and that duty is not only to avoid injuring them when and if their peril is discovered, if he can reasonably do so, but, further, to use due diligence to discover their presence."

See, also, Thomas v. Roberts (La.App.) 144 So. 70.

But this doctrine should be applied only where the danger is open and obvious and where a reasonably prudent person would observe it and avoid it, for ordinarily a driver may assume that ·other persons will obey the law and will not attempt to cross in violation of a "right of way." In other words a driver situated as was Manuel need not exercise that high degree of care which he should have observed had he not been favored and protected to some extent by the traffic light.

In Buckley v. Featherstone Garage, supra, the court said: "Under the traffic light system, a motorist who is proceeding under the proper signal should not be held to that same high degree of care and vigilance as

if no such system prevailed. He has the right to assume that the signals are understood and will be observed, and he is not required to anticipate that pedestrians will violate the ordinances and rules and enter a crossing on the 'wrong signal. The danger at such crossings is less than if there were no such signals, and therefore, less care is exacted."

■ Manuel's testimony cannot be interpreted otherwise than as an admission that he realized that Bradford had crossed the roadway on the other side of Carrollton avenue in violation of the city ordinance and in spite of the fact that a red light was facing him. His testimony as to Bradford's action is as follows: "He was coming at a pretty rapid rate of speed and I thought he would stop in the neutral ground, as most cars do that early in the morning. * * * The red light was against him. * * *"

The interesting question, then, is this: May one who sees another violate a safety law in one respect assume that he will respect it in another? In other words, Does the assumption that all persons intend to obey the law exist in the case of one who has just violated the very law which the other person assumes he will obey?

Our answer is that, under the circumstances shown by this record, Manuel was justified in assuming that, so long as it was possible for Bradford to obey the law and to stop in order to accord to him the "right of way," he (Bradford) would do so.

The neutral ground of Carrollton avenue is shown to be about 50 feet wide. When Bradford entered the lakeside roadway he was some 80 or 90 feet from the point at which the collision later occurred. Even though he entered that roadway "against" the light, there was yet to be traversed the width of one roadway and of the neutral ground and of a part of the other roadway before a collision could occur. In that distance he could easily have stopped his car, since his speed was not extraordinary; none of the testimony fixes it at above 30 or 35 miles an hour as he first entered the intersection. So long as Bradford could yet stop, Manuel was justified in assuming that he would do so, unless it was

obvious that he was not paying attention, or that his speed was so great as to indicate that he had no intention of stopping. Such was not the case here.

We cannot interpret the subsequent action of Bradford in discussing with Manuel the name of the garage man to whom Manuel intended to send his car for repairs otherwise than as an indication that he (Bradford) considered himself to some extent at fault. Manuel states that Bradford said after the accident that he would pay for the damage and that he agreed that the car should be sent to Michon's garage, which apparently had been employed by Manuel on previous occasions. There is other testimony corroborative of this and still other contradictory. Bradford himself states that he made no such statement, but he does admit that Manuel discussed with him the name of his garage man. He knew that the name was Michon, and we cannot understand why this matter should have been discussed unless the liability of Bradford was also discussed at the same time. At any rate the record leaves us well convinced that there was no error in the finding of the court below on the question of liability.

The damage to the automobile of Manuel was shown to have been extensive. He introduced proof to the effect that the bill for the repairs amounted to $78.04. The bill for X-ray photographs amounted to $10, and the physician testified that his charge was $25. This makes a total of actual expenses of $113.04.

■ The physical injuries are said to have been quite painful. They consisted of a contusion of the chest and right side, and at first the doctor believed that there had been a fracture of the ribs. Though it developed later that there was no such fracture, it became necessary for him to strap up plaintiff's side and for plaintiff to remain so strapped for a period of several days. The amount allowed for these injuries and for this suffering was $100, which is not excessive.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.