**CLARK et al. v. DE BEER et al.**

No. 5820.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1939.

Rehearing Denied March 8, 1939.

Writ of Certiorari and Review Denied
May 1, 1939.

Ben F. Thompson, Jr., and K. Hundley, both of Alexandria, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

HAMITER, Judge.

The fifteen-year-old son of plaintiffs, Joe L. Clark and Mrs. Lucinda Clark, was struck by an automobile driven by Miss Willie Creed, at the intersection of Murray and Third streets in the City of Alexandria, Louisiana. He was riding a bicycle. The accident occurred during the noon hour of Sunday, November 15, 1936.

The automobile was being operated with the consent of its owner, Miss Gladys De-Beer, and was covered by a policy of liability insurance written by the Travelers Insurance Company.

Death resulted to the child on the following morning.

The injuries and death are attributed by the parents solely to the alleged gross negligence and carelessness of Miss Creed. They ask damages in this proceeding, from said driver, the car's owner and its insurer.

Defendants deny that the automobile operator was in any manner negligent in her driving, and, alternatively, aver that decedent was contributorily negligent.

The trial judge rejected plaintiffs' demands and they appealed.

For the purpose of this discussion we shall consider Third street as running north and south and Murray street east and west. They cross at right angles. Each has a paved surface 33 feet in width. Suspended above the center of the intersection is an electric semaphore signal light used in the directing of traffic. The usual light of green for "go", red for "stop", and yellow for "caution" are displayed at appropriate intervals. Yellow lines, drawn on both streets ten feet back or away from their respective intersectional corners, provide a lane for pedestrian travel.

Parallel with Third street are Second and Fourth streets. The former lies east of it while the latter is on the west.

The mass of testimony relating to the manner of the occurrence of the accident is exceedingly conflicting. Regarding this lack of uniformity, the brief of plaintiffs' counsel interestingly states:

"To say that this case, an automobile injury one, contains the usual amount of conflicting testimony would be putting it too mildly and not doing full justice to the case. In the many years of experience of the writer of this brief in the trial of cases of this nature he has never seen one in any ways to be compared to this case as to conflicting testimony. Four witnesses for plaintiff, for instance, testified the driver of the Creed car ran through a red light and five or six witnesses for defendants testified the light was green. Four or five witnesses for plaintiffs' testified the Clark boy came from the direction of Second street or the river going in the direction of Fourth street and the three ladies in the car and three other witnesses testified he came from the direction of Fourth street or the opposite direction. Several witnesses for plaintiffs testified the Clark boy was pulled from under the automobile, whereas a larger number of witnesses testified that the car passed completely over him, one or more even testifying that the boy then got up and fell in the arms of one of the witnesses. These illustrations are only a few of the many irreconcilable statements of the various witnessses."

After a careful and thorough study of the record, we find the preponderance of the evidence favoring the hereinafter detailed pertinent facts.

About ten o'clock A. M., of the day of the accident, Miss Creed and two other young ladies entered the 1935 Ford coupe

which they had borrowed from Miss De-Beer, its owner, and proceeded on a pleasure drive to Bunkie, Louisiana, a nearby town. All were nurses at the Baptist Hospital located in Alexandria and their departure was made from the nurses' home there. They had dinner at their destination and immediately thereafter began their return journey. On reaching Third street in Alexandria they turned left thereon and traveled north toward Murray street and the Baptist Hospital. When approaching the intersection in question the aforementioned semaphore signal flashed a red or stop light in their direction. Miss Creed, the driver, thereupon brought the machine to a stop at a point a short distance south of the yellow line of the nearest pedestrian lane. There she remained until the red light and the following yellow or caution one had been displayed. After looking both ways on Murray street, and on the appearance of the green light, she continued north and into the intersection, traveling on her right side of the street. No traffic appeared within the range of her vision except one or more approaching automobiles on Third street. She had negotiated about two-thirds of the crossing when plaintiffs' son, on his bicycle, suddenly appeared in her path of travel. This was the first view of him that she had. Her car was then moving in low gear at about ten miles per hour. The boy and his vehicle were knocked to the pavement, and both right wheels of the automobile passed over his body. The car was swerved to the left. It came to a stop after traveling about twenty feet from the initial point of contact and after striking another motor vehicle.

The child had come from the direction of Fourth street and was traveling on Murray street toward Second street, or the east. He was using the left or north side of the thoroughfare and was propelling his bicycle at a speed faster than that of the automobile. An eye witness describes his manner of travel thusly: "He was riding a bicycle and pedaling very fast; in fact, he was riding his pedals, pumping very hard." The red or stop signal which faced him was not obeyed. Instead, he ventured forth, in disregard of the warning and without slackening his speed, and found himself in front of the slow-moving Ford coupe in the northeast quadrant of the intersection.

With further reference to the facts of the case, we quote the following from the brief of plaintiffs' counsel:

"We shall undertake with confidence to point out herein the error of the District Court in this case. We shall do so taking the testimony of witnesses for defendants and for the purpose thereof, will admit that the Judge of the District Court was correct in saying, as he evidently did, that the driver of the car was proceeding across the intersection on a green light and that, therefore, the Clark boy either entered the intersection on a red light or the light had turned red after he entered the intersection and that he came from the direction of Fourth Street as contended by defendant rather than from the direction of Second street as contended by plaintiffs. As will be hereinafter pointed out, we believe the error of the District Court was one of law rather than of fact, although the Judge did not assign written reasons for his decision."

■■ Undoubtedly the cyclist was grossly negligent and careless in traveling fast into the intersection, on the wrong side of the street, against a stop signal, and without giving heed to traffic enjoying a right of way privilege there; and his negligence continued up until the moment of the accident. On the other hand, it is clear that Miss Creed was free from any negligence whatsoever, unless it can be concluded that she, through the proper exercise of due diligence and of her faculties of observation, could have seen the child in time to avoid the accident, and failed in the performance of her legal duties. Thus there can be no recovery herein unless the doctrine of the last clear chance is applicable; and this is obviously recognized by counsel for plaintiffs, for in their brief we find: "Plaintiffs in this case rely entirely upon the decision of the Supreme Court in the case of Jackson v. Cook, 189 La. 860, 181 So. 195."

The mentioned case furnishes the most recent expression of our Supreme Court on the last clear chance rule. It discusses at length and approvingly the decision of that tribunal in Rottman v. Beverly, 183 La. 947, 165 So. 153, 156.

■■ The automobile driver in the Rottman case had sufficient time, after actually seeing plaintiff, to prevent the accident. In its opinion therein the court said that where a plaintiff " * * * negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the neg-

ligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger." And further:

"In cases of discovered peril, it is pertinent and material to ascertain whether the defendant could, after discovering plaintiff's peril, have averted the accident by the exercise of due diligence. If he could have averted the accident by the exercise of due diligence and failed to do so, his negligence in that respect is considered the proximate and immediate cause of the injury, and the plaintiff's negligence the remote cause, and the plaintiff may recover although his negligence continued to the instant of the accident. The basis of recovery in such cases is the defendant's superior knowledge of the peril and his ability to avoid the injury. He has the last clear chance. 20 R.C.L. § 116, page 141."

In Jackson v. Cook, supra, it was said with reference to the Rottman case, that [189 La. 860, 181 So. 197]:

"This makes it clear enough, we think, that we did not intend to, and did not, set aside the well-recognized and settled rule that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."

The defendant driver in the Jackson case was held liable under the last clear chance doctrine. The following additional pertinent language is found in the opinion of that case:

"In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable."

Defendants in the instant controversy cannot be held liable under the authority of the Rottman case, for the record convincingly discloses that the driver did not actually discover the child until he was immediately in front of her machine, and it was then too late to avoid striking him. But is there liability under the holding and reasoning of the Jackson decision? We think not.

Miss Creed looked both ways on Murray street just prior to her entrance into the intersection. The speeding cyclist was undoubtedly screened from her view at that time by the brick building that occupied the corner on her left. She observed no one approaching, so she directed and continued her attention in front of her and proceeded forward. It was not encumbent on her to persist in looking from side to side as she progressed. Her legal duty, in view of the fact that she had the right of way, was to operate her car cautiously and carefully at a moderate speed, to be reasonably diligent in her driving and to maintain a general observation of the intersection. This, we think, she did.

In Buckley v. Featherstone Garage, 11 La.App. 564, 123 So. 446, 450, this court said:

"Under the traffic light system, a motorist who is proceeding under the proper signal should not be held to that same high degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed, and he is not required to anticipate that pedestrians will violate the ordinances and rules and enter a crossing on the wrong signal. The danger at such crossings is less than if there were no such signals, and therefore, less care is exacted. A motorist must use such diligence and care as is commensurate with the dangerous character of the locality. But, even though the danger be slight, he is not absolved from the duty to look ahead."

We used the following language in Roll Osborn & Sons v. Howatt, 167 So. 466, 469, after quoting the last above mentioned extract:

"Howatt did look ahead. The green light was in his favor. Cars on each side had stopped in their proper lanes in observance of the red light facing them. Its change being imminent, he looked up at it as he entered the intersection. Everything that he heard or saw invited him to proceed.

He neither saw nor heard the ambulance approaching at high speed out of the usual lane of travel. While many witnesses heard the siren, their ability to do so was not interfered with by the noise of a running automobile as was his. He had no reason to anticipate the approach of the ambulance, and was not delinquent in failing to see and hear that which he was not legally required to anticipate."

Accordingly, we conclude that Miss Creed cannot be charged with having constructively seen the boy within sufficient time to avoid the accident, and that the last clear chance was not with her.

The defendant driver testifies that, "I didn't put on the brakes until the front and back right wheels ran over the boy and after I was off the boy I stopped the car immediately". She explains this by further stating: "Well, when I realized I was on that boy I didn't want to leave the car on his body, I wanted to get the boy between the front wheel and back wheel, so he could be taken out, and I realized I had misjudged my distance and I had him under the back wheel and I rolled off of him and stopped the car." Plaintiffs' counsel severely criticize her actions and say: "Had she applied her brakes immediately upon seeing the Clark boy she would not have run over him, for several of the witnesses for defendant (to say nothing of those for plaintiffs) say the boy was knocked several feet by the impact of the car and then run over."

There was a bare possibility, but not at all a certainty, that the running over of the boy would have been prevented had the brakes been instantly applied on his appearance before the machine. In all events, it is to be remembered that the driver was then faced with a sudden emergency, not of her own choosing or making, and under such circumstances she is not chargeable with negligence for having acted unwisely if it can be said that she did so. The syllabus in Jimes v. Fidelity & Casualty Co. of New York, La.App., 163 So. 421, which accurately reflects our holding in that case, states:

"Where motorist crossing street intersection over which he had right of way was confronted with emergency caused by unexpected entrance of motorcyclist who had stopped at intersection, motorist held not liable for error in judgment which may have contributed to collision, where motorcyclist's primary negligence brought about emergency."

The issues of the case appear to us to have been correctly adjudged by the trial court, and the judgment is affirmed.