JOHNSON, Judge.
Plaintiffs sued to collect $739.12 damages to a 1957 International Truck caused by a collision of the truck with a 1955 Buick belonging to the defendants. The trial court rendered judgment in favor of the plaintiffs for $426.34, interest and costs. The case comes up on a suspensive appeal by the defendants. The plaintiffs answered the appeal and asked to have the judgment increased to the original amount claimed.
Plaintiff, Homeland Insurance Company, insured the truck owned by Burken Realty Company, Inc., against collision damage less $100.00 deductible. The Insurance Company paid $639.12 of the damage and the owner executed a subrogation of his claim to the Insurance Company in that amount. The Insurance Company filed this suit to recover that amount and the Realty Company has joined in the suit to collect the $100.00 which it paid, both plaintiffs alleging that the damages were caused by the negligence of the defendant, Mrs. Marshall, who was driving the Buick which she said belonged to her and her husband. The defendants deny the charge of negligence and alleged in the alternative that the driver of the truck, as an employee of the Realty Company, was guilty of contributory negligence.
The accident occurred at 1 o’clock P.M. at the intersection of Elysian Fields Avenue and No. Miro Street, in the City of New Orleans on July 7, 1958. The two streets run at right angles to each other. Traffic at the intersection was controlled by an electric semaphore or signal light.
There is actually no dispute about the manner in which the accident happened. The only disagreement arises from the contentions of the parties as to the relative duties imposed on the drivers of the two vehicles and their observation or non-observation of their duties. The truck was being driven by William Cannon, an employee of the Realty Company, who was travelling toward Canal Street on No. Miro Street. When he arrived at the down river side of Elysian Fields Avenue the traffic light was red on his side. He stopped the truck. When the light turned green he entered the down river side of Elysian Fields Avenue and crossed to the neutral ground. He saw vehicular traffic stopped on the uptown side of Elysian Fields Avenue headed from his right toward the river. He continued across the neutral ground and when he was about to enter the uptown side of Elysian Fields Avenue, or just as he entered it, Mrs. Marshall, driving her Buick, in the left lane, next to the neutral ground toward the river, passed the vehicles which were stopped for a red light and entered the intersection of No. Miro Street to cross in front of the truck. The truck struck the left front door and left side of the Buick. The truck and the Buick both stopped almost immediately. Neither the truck nor the Buick was travelling fast.
Each side of Elysian Fields Avenue accommodates three traffic lanes. The car in the middle lane heading towards the river was being driven by L. J. Rives. He testified that he was stopped for the red light and that Mrs. Marshall came by his left side and entered the intersection of No. Miro Street in front of the truck without stopping. Mrs. Marshall testified that she did not see the red light and did not even know there was a light there. There was a passenger bus at a stopped position in the outside lane to the right of Mr. Rives. Other cars were stopped behind Rives and the bus.
Each driver had a clear view without obstruction of the intersection and the approaches in all directions. Neither driver saw the other vehicle until any opportunity to do anything to avoid the collision had passed. William Cannon said he saw the Rives car and the bus and the other cars to the rear of them, all at stopped positions. Knowing that the green light was in his favor Cannon knew they stopped for the red light facing them. The only serious contention made by counsel for defendants is that the truck driver did not *239 see the Buick until it was 5 or 6 feet from him and that he should have seen it sooner and at a time when he could have done something to avoid striking the Buick. Counsel says in his brief:
“Further, although it would not be incumbent upon Cannon to do other than assume the moving vehicle was going to stop, since he was looking in that direction he should have seen the moving vehicle as his truck and the moving vehicle began to converge toward a meeting point, whereupon it was incumbent upon Cannon to take greater care than he did, and the accident could have been avoided. * * * ”
The latest cases under similar circumstances hold that the driver of a vehicle when he knows he is crossing an intersection on a green light, cannot be held to the same degree of care as he would be if there were no light present. While Cannon did not see the Buick approaching the intersection, he did make a reasonable observation and saw the other cars stopped for the red light. If he had seen the Buick coming toward the intersection he would have had the right to assume that it would stop as the other cars had done. The Buick was not travelling fast and the presence of the other cars and the bus at stopped positions for the red light can account for his failure to pay particular attention to the Buick moving up to the intersection. Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Bryant v. Ouachita Coca-Cola Bottling Co., 239 La. 83, 117 So.2d 919; Moss v. Travelers Insurance Company, La.App., 119 So.2d 160; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292 (citing the following cases: Manuel v. Bradford, La.App., 166 So. 657; Clark v. De Beer, La.App., 188 So. 517; Seiner v. Toye Bros. Yellow Cab Co., La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, Inc., La.App., 22 So.2d 473).
The driver of the truck was employed primarily as a mechanic for the Realty Company and part of his duties was to maintain the truck involved in this accident. He testified that the truck was in good condition before the accident and the items listed on the invoice of repairs were caused by this collision. Russell Alongi, a witness for the plaintiffs, was the repair shop supervisor for International Harvester Company. His experience as such qualifies him as an expert on repairs and costs. He examined this truck before it was repaired and testified that all of the items listed were new damages and that the repairs were made under his supervision. The total amount of the invoice was $745.10. It was explained by Mr. Kennedy of Burken Realty Company, Inc., that the battery in the truck was destroyed in the accident and was replaced with a new battery, and in order to arrive at the value of the old battery $5.98 was deducted from this invoice as depreciation of the old battery, thereby reducing the total amount of damage claimed by this suit to $739.12. The trial judge said in his reasons for reducing the amount of this claim that he was “ * * * at a loss to understand how the accident caused $739.12 damage to the 1956 International Dump Truck.
“The police report shows that the damage to the truck was ‘LT\ Further, that the right front of the truck was damaged.
“The record will show that the truck was travelling 10 miles per hour and hit the Buick.
“Consequently, the Court will deduct every possible item in keeping with reason.”
The trial court then listed eight items totalling $183.62 and deducted 30% of the labor charges to reduce the total to $426.34 for which he gave judgment.
The police report was admitted in evidence but the police officer was not called to testify. The report by a police officer called to the scene that the damage was “LT” (whatever that means) can be given very little if any weight at all. It is common knowledge that a police officer at the scene *240 of an accident cannot obtain a very accurate idea of the damage to a vehicle by merely looking at it. A court must take the evidence as the court finds it. In this case there is no evidence to warrant the reduction of the amount. On the contrary, the amount claimed as damages caused by this accident is adequately proven by competent testimony and there is none to the contrary. The Lord only knows why two colliding, vehicles travelling at reasonable speed may cause the amount of damages claimed in this case. There is no way humanly possible to account for what sometimes happens as a result of a collision between two motor vehicles.
For these reasons the amount of the judgment will be increased from $426.34 to $739.12, and as thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.