AYRES, Judge
(dissenting).
The majority opinion, in holding plaintiff’s assured guilty of contributory negligence, places a higher degree or standard of care on a motorist approaching a railroad crossing protected by an electric or mechanical signal device than required by law or that exercised by a reasonably prudent person.
The signal device was inoperative as plaintiff’s assured approached the crossing. The nonfunctional device displayed no warning; the signal was the same to a motorist as given by a fully functional device when no train was approaching. Thus, the motorist had a clear signal to proceed. He had no notice or warning that the signal device was not in operation.
Under the provisions of LSA-R.S. 32:171, as amended by Act 310 of 1962, the motorist was not required to stop at the crossing except when “a clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train,” as the train was not visible nor did those in charge ring a bell, sound a horn, or blow a whistle to warn of the train’s approach to the crossing.
Where railroads provide signals or other warning devices at highway crossings, motorists have a right to presume that these safeguards will be maintained and attended, and, in the absence of notice to the contrary, may rely upon them and, within reasonable limits, act on the assumption, when presented a favorable signal, that it is safe to proceed over the crossing.
In this regard, as heretofore pointed out, the signal of an inoperative device is a favorable signal to a motorist to proceed. The majority opinion recognized that plaintiff’s assured was observant, keeping and maintaining a proper lookout, and operating his vehicle within legal limits and in obedience to positive law.
Appropriate to the situation here is an observation of Mr. Justice McCaleb, now of the Supreme Court, at the time a judge of the Orleans Court of Appeal, in a dissenting opinion in Kientz v. Charles Dennery, Inc., 17 So.2d 506, 513, which was quoted with approval by the Supreme Court in reviewing the decision of the Appellate Court (209 La. 144, 24 So.2d 292, 295 [1945]). There it was stated:
“ ‘We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules *567 and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributable to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.’ ” (Emphasis supplied.)
There was no showing that while Waters, plaintiff’s assured, was operating his automobile in obedience to positive law there was any dereliction of duty of a substantial character on his part or that he was guilty of any dereliction constituting a direct factor that, without it, the accident would not have occurred.
If speed alone is a basis for a charge of contributory negligence, though the speed was within legal limits, as appears to be the basis for the holding by the majority that plaintiff’s assured was guilty of contributory negligence, then any speed, however slow, could, by the same reasoning, be held to constitute contributory negligence inasmuch as it could be as logically inferred that by a still slower speed the motorist might have avoided the accident. This is a matter of conjecture and, by conjecture, defendant has not sustained its burden and established contributory negligence on the part of the motorist.
The provisions of LSA-R.S. 32:64, Par. A, quoted in the majority opinion in connection with the charge that plaintiff’s assured was driving at an excessive rate of speed, are without application to one negotiating a railroad crossing. These provisions have reference to conditions of highways themselves and to the weather prevailing at the time.
The authorities upon which the majority opinion is predicated were based upon statutes prior to Act 310 of 1962. These prior enactments required all vehicles to come to a complete stop at all railroad crossings. They, however, were repealed or superseded by the present statute LSA-R.S. 32:171, as amended by Act 310 of 1962.
Traffic conditions have changed. The “advanced stage of the motor age,” referred to in the Kientz case, has again advanced and the elimination of the hard and fast rule that all vehicles must come to a complete stop at railroad crossings is in keeping with the more advanced stage of the motor age.
Moreover, maintenance of a nonfunction-ing signal device evidencing that the crossing is clear and safe for passage constitutes a trap of the weirdest sort which the most prudent may not avoid. This is particularly true in view of the fact that, by virtue of the connection of the device to the rails 2,500 feet from the crossing, those in charge of a railroad locomotive approaching a highway crossing are given a signal or warning that the device is not only nonfunctioning as to approaching motorists but that it is displaying a signal indicating it is safe for motorists to proceed. That such a warning was displayed for the engineer and fireman of the locomotive was shown by the testimony of J. W. Bishop, defendant’s witness and signalman with an experience of 22 years in maintaining, in working condition, signals of this character.
Nevertheless and notwithstanding they saw or could have seen, by the slightest observation, that the signal device was not functioning but was displaying a favorable signal to motorists, those in charge of defendant’s locomotive neither rang a bell nor sounded a horn or blew a whistle to warn motorists of the train’s approach to the crossing; nor did they take any other precaution to warn or protect highway traffic about to move upon or in the act of negotiating the crossing.
For these reasons, I am of the opinion that the judgment appealed is correct and respectfully dissent from its reversal.
Ayres, J., dissents from refusal.