JANVIER, Judge.
The ■ automobile collision from which this suit results took place shortly after 9:30 o’clock on the night of September 7, 1947, at the corner of South Carrollton and South Claiborne Avenues in New Orleans.
Plaintiff, Billy S.angree, was driving his Plymouth Coach on Carrollton Avenue, going in the direction of St. Charles Avenue. Mrs. -Sangree was on the front seat alongside him. Defendant, Steve Grilletta was driving his automobile on Claiborne Avenue in a downtown direction, being on his way home from Jefferson Parish. With him in his car were.his wife, his daughter, his father,' and another very young child.
Both avenues are wide, double driveway thoroughfares, each having a very wide neutral ground separating the two roadways, the neutral ground of Claiborne Avenue being extremely wide, although the record does not give its exact width. Since both avenues have neutral grounds, there is a large rectangle of neutral ground which is what may be termed a double neutral ground, being between the two roadways of both avenues.
The two cars met in the intersection which is formed by the upper roadway of Carrollton Avenue and the river or St. Charles Avenue side roadway of Claiborne Avenue.
Sangree brought this suit in the First City Court of New Orleans, alleging that his a-utomobile had been damaged and that he had expended $195.88 in making the necessary repairs. He prayed for judgment against Grilletta in this amount.
- .He charged that Grilletta was negligent in entering the intersection when the traffic signal lights were showing red towards Grilletta and that he was especially negligent in that, although other automobiles which had been going down Claiborne Avenue and had stopped because of the .unfavorable lights- remained stationary, Gril-letta drove his car past these other vehicles and entered the intersection in spite of the red light and ran into plaintiff’s car, striking it on the right side near the rear.
Sangree charges also that Grilletta was at fault in operating his car at an excessive rate of speed and without due regard to traffic laws and regulations.
Grilletta filed answer admitting the occurrence of the accident but denying that he had been at fault in any way. He averred that the accident was caused solely *852 by negligence on the part of Billy Sangree. He particularly averred that Sangree operated his car with ifutter disregard to the traffic signal * * * ” and that he attempted “to cross Claiborne Avenue when the traffic light controlling traffic on Car-rollton Avenue was red.” In the alternative that it appear that he, Grilletta, was in any way at fault, he specially pleaded that the negligence of Sangrees constituted contributory negligence and was the proximate cause of the accident.
There was judgment' dismissing plaintiff’s suit, and he has appealed.
It is quite necessary to an understanding of the accident that the locus in quo be described. As we have already said, both avenues have double driveways, each having a wide neutral ground. The double neutral ground, which separates the driveways on Carrollton Avenue and also the driveways on Claiborne Avenue, is'a large rectangle. There are two' traffic signal lights at that intersection. One is on the corner of that rectangle, which is nearest Jefferson Parish and is also nearest the lake side driveway on Claiborne Avenue. The other is not in that rectangle, but is located on the neutral ground of Claiborne Avenue on the downtown side of the downtown driveway and on the corner nearest the Mississippi River.
As the Sangree car was coming in Car-rollton'Avenue toward St. Charles Avenue, Sangree faced the first of these lights which was slightly to his left across the first driveway of Claiborne Avenue and on the nearest corner of the rectangular double neutral ground. As Grilletta’s car approached Carrollton Avenue it • faced the other traffic light which was across both driveways on Carrollton Avenue.
There is much conflicting testimony concerning the colors of these two traffic lights' as the two cars entered the intersection, though it is conceded that they operated in unison-. "
Sangree did not appear as a witness, his counsel seeking to explain -his- absence by stating that he lives in Michigan and that a visit to New Orleans would have been unjustifiably expensive.
Mrs. Sangree says that when the Sangree car entered the first roadway of Claiborne Avenue the light, which Sangree saw and which was slightly to his left, was green, and she says that after their car passed that first traffic light, she did not notice whether the lights changed. She says that it is possible that while the Sangree car was traversing the neutral ground- the lights might have changed to amber and that it is also possible that . they might have changed to red by the time their car “got into the river side roadway of Claiborne Avenue.”
Grilletta and his witnesses say that as his car approached Carrollton Avenue the light which had been red was changing to amber when his car was about 30 feet from the intersection; that Grilletta reduced his speed, and that when his car was 8 or 10 feet from the intersection the light turned to green and that he proceeded into the intersection, but that just as he entered it, the Sangree car suddenly emerged and entered the roadway ahead of him.
There was a row of automobiles to the left of the Grilletta car alongside the neutral ground of Claiborne Avenue, and there is a dispute over the question of whether the first of those cars had started forward just before the Grilletta car passed it to its right. Grilletta says. that this car had -already started forward, but, on behalf of plaintiff, it is contended that this car and the others back of it were standing still waiting for the light to change when Grilletta’s car went past that stationary car and crashed into the Sangree car before it could clear the intersection.
Our conclusions on these disputed facts are that when the Sangree car entered the first roadway the light facing it was green, and that as it traversed the neutral ground the light changed to amber and 'then to red before it entered the second roadway. We find also that as Grilletta approached Car-rollton Avenue the light facing him was red, and that it changed to amber and then to green just before he entered the intersection. We find, too, that- after Sangree entered the first roadway of Carrollton Avenue and after the light had changed to amber, there was ample 'distance and oppor *853 tunity for him to have brought his car to a stop before entering the second roadway had he been paying attention to the traffic signals and had he been proceeding 'at a reasonable speed. His counsel contends that it was almost impossible for him to see the traffic signals since he had passed the first- which was- to his left and since the second was so far across the lower driveway of Carrollton Avenue that he could not have seen it without diverting his attention from the roadway ahead. We do not find this explanation acceptable. The rough diagram, which is introduced in evidence, and the testimony as to the location of the traffic signals convince us that had Sangree merely glanced to his -left he would have seen this other traffic light and would have noticed that it was changing to amber and also later to red.
As a result of this finding of facts there is presented the very interesting question of whether a motorist, in crossing a very wide, double driveway thoroughfare between which two roadways there is an extremely wide neutral ground, exercises proper care if he enters the first roadway on a favorable light, proceeds to cross that driveway and the neutral ground, an'd then attempts to cross the second roadway without again looking at the traffic signal to see that it is safe for him to do so.
A somewhat similar question was presented to us when we considered the case of Kientz v. Charles Dennery, Inc., La.App., 17 So.2d 506. In that case we held that even though a motorist in such a situation may enter the first roadway on a favorable light, there yet remains in him some slight duty to glance at the second roadway before he enters it to make certain that in spite of the fact that he enters the first on a favorable light, no other motorist may be approaching the second intersection. One of the then judges of this Court dissented and in a dissenting opinion said that he was unable to agree that the driver, who enters the first intersection on a favorable light, is under any obligation to again look for possible traffic on the second roadway. The Supreme Court granted a writ of certiorari and reversed our decision. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294. That decision of the Supreme Court is now cited as authority for the view that a favorable light in such a situation does not relieve the. favored driver of the duty to exercise some slight caution to make certain that other drivers may not have entered the intersection in spite, of an unfavorable light. The Supreme Court said: “It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable, light, is not free from negligence if .he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not foe disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. * * * ”
That was exactly the view expressed in the majority opinion in the decision of this Court in the Kientz case. If we felt that the Supreme Court intended to adopt the views set forth in the dissenting opinion rendered in this Court and to hold that when a motorist enters the first roadway of a double driveway thoroughfare on a favorable light he • need look no-more, but may. proceed across that roadway and the wide neutral ground and then enter the second roadway without again looking for traffic, we would willingly,follow the pronouncement, though we could not accept it as sound. But we do not think that the Court meant to announce any such doctrine.’
We readily agree that a motorist, situated- as was Grilletta, should not, immediately upon being faced by a favorable light, dash into the intersection without first making certain that there is not in the intersection some other vehicle which had entered it and had been unable to clear it before the change in the light. We so stated in Thomas v. Roberts, La.App., 144 So. 70.
We, therefore, feel that Grilletta was at fault in entering the intersection immediately after the light had changed and without making certain that no other vehicle had entered it or was about to enter it.
But the fact that Grilletta should not have driven into the intersection, even *854 on the favorable light, without first looking to see that it was safe to do- so, does not mean that Sangree is entitled to recover for the damage sustained by his car. On the contrary, we think that Sangree was at fault in entering the second roadway when the light had turned against him for the reason that there was ample space in the neutral ground for him to have brought his car to a stop if he had been paying any attention at all to the traffic signals.
While the exact width of that neutral ground does not seem to be shown in the record, we gather from the evidence- — -if we did not know it as a fact — 'that that neutral ground is extremely wide and there are no street car tracks on it.
We are convinced from the record that while Sangree was traversing the first roadway, and possibly just as he entered the neutral ground, 'the light turned to amber. A glance to his left would have disclosed to him the danger. He should then have realized that before he could clear the neutral ground and the second roadway the light might change to red. He either did not look at the light, or he decided to- dash across in the hope that he could complete the crossing before any other car could enter. In either event, he was guilty of negligence.
We have no doubt at all that when there is a neutral ground sufficiently wide to afford space for an automobile to stop, it is the duty of the driver of' the car to pay some attention to the lights and, even though he may have crossed the first roadway on- a favorable light, to bring his car to a stop in the neutral ground rather than to attempt to continue across in the face of the changing light.
The situation is no doubt quite different where the neutral ground is so very narrow that it will not afford protection to the crossing motorist, and it is- also different from that in which there are street car or train tracks on the neutral ground which might render it dangerous for the crossing motorist to stop. But, as we have said, we are certain that he should do so where the neutral ground is wide enough to afford protection and he has space and time to bring his car to a stop. That the other motorist may expect him to stop in such a neutral ground where the light has changed against 'him, we said in Manuel v. Bradford, La.App., 166 So. 657.
In the decision in Kientz v. Charles Den-nery, Inc., supra, the Supreme Court approved our holding in the Manúel case,saying: “ * * * a motorist crossing a roadway against a red light on a neutral ground street on which he was traveling, was justified in assuming that the other motorist would obey the law and stop on the neutral ground so long as it was possible for him to do so. * * ,
Since Sangree should have noticed the changing light and should have stopped before leaving the protection which was afforded him by the neutral ground, he was negligent in not stopping. This contributory negligence bars recovery by him.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.