CULPEPPER, Judge.
This is an action in tort instituted by Mr. Wesley Fruge and his wife, Mrs. Grady Fruge, for damages for personal injuries received in an intersectional collision. The defendant, Aetna Insurance Company, is the liability insurer of a 1965 red Ford Mustang owned by Vincent Abate, Jr. and being driven by his then 17 year old daughter, Mary Abate, at the time it collided with the Fruge vehicle. From an adverse judgment the defendant appeals.
The accident occurred in the City of Lake Charles at the intersection of Ryan Street and Prien Lake Road on May 15, *101 1965, at approximately 10:30 a. m. Ryan Street is a four-lane thoroughfare running north and south, with two lanes of traffic in each direction. Prien Lake Road is a two-lane street running east and west, with one lane of traffic in each direction. On the date of the accident this intersection was governed by a single three-phase, four-sided semaphore traffic light.
Mary Abate was driving south in the outside lane of Ryan Street. Mr. and Mrs. Fruge were proceeding east on Prien Lake Road and had stopped at the intersection in obedience to a red light. After the light changed to green, Mr. Fruge started across the intersection, but the front end of his vehicle struck the right rear side of the Mustang after moving about four feet into the right lane of southbound traffic on Ryan Street.
Plaintiffs contend the accident was caused solely by the negligence of Mary Abate in failing to stop for a red light. The defendant contends the light was green when its insured entered the intersection. In the alternative, the defendant urges the contributory negligence of Mr. Fruge as a bar to recovery.
The trial judge held the accident was caused solely by the negligence of Miss Abate in entering the intersection on a red light; and that the defendant had failed to prove any contributory negligence on the part of Mr. Fruge.
The first issue is the negligence of Miss Abate. Both Mr. and Mrs. Fruge said that the light had definitely turned green before they started forward into the intersection. This was corroborated by two other disinterested eyewitnesses.
Miss Shirley North, a 17 year old high school student, was driving west on Prien Lake Road toward Ryan Street. As she approached the intersection, she noticed the Mustang, about 50 yards from the intersection, traveling south on Ryan Street in the outermost lane at a “real fast” rate of speed. She said that the light had turned to green for her direction of traffic by the time she reached the intersection and, thinking that the Mustang would stop, she slowly started across. However, when she got to the middle of the intersection, she saw that the Mustang was not going to stop, so she slammed on her brakes to avoid hitting it.
Stephen Connor also witnessed the accident from a service station on the northwest corner of the intersection. He was standing in front of the station, approximately 30 feet from the northwest corner of the intersection. He observed the light change to red for traffic on Ryan Street when the Mustang was about 60 feet from the intersection. Furthermore, he testified that the Mustang was traveling at more than a normal rate of speed so that even if Miss Abate had applied her brakes she could not have stopped for the light in time.
On the other hand, Mary Abate was the only person to testify that she had a green light when she entered the intersection. She said she was driving south on Ryan Street in the outside lane at 25 to 30 miles per hour; when she was 20 feet from the corner of Prien Lake Road, she looked at the light for the first time and it was green; she rechecked it again just before she entered the intersection and it was still green. She said she never saw the Fruge vehicle until after the accident.
From the above, we conclude a clear preponderance of the evidence shows Miss Abate ran the red light.
A more serious question is presented in regard to the contributory negligence of Mr. Fruge. The plaintiff appellee cites a line of Supreme Court cases holding that a motorist proceeding on a favorable light, at an intersection controlled by a traffic light, is not held to as high a degree of care and vigilance as a favored motorist at an intersection controlled merely by stop signs. Soprano v. State Farm Mutual Automobile Ins. Co., 246 La. 524, 165 So.2d *102 308 (1964); Derouen v. American Employers Insurance Co., 240 La. 486, 123 So.2d 896 (1960); Bryant v. Ouachita Coca-Cola Bottling Co., 239 La. 83, 117 So.2d 919 (1960); Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1 (1960); Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292 (1945). For instance, in the Youngblood case our Supreme Court said:
“Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.”
The defendant appellant relies on a line of cases which he asserts stand for the proposition that a motorist, who is stopped for a red light, is at fault in entering an intersection immediately upon the light turning green, without first taking the elementary precaution of making certain that there were no oncoming motorists about to enter the intersection who were unable to stop, or who were already in the intersection but were unable to clear the same before the light changed. (Citing McDaniel v. Grain Dealers Mut. Insurance Co., 182 So.2d 561 (La.App. 1st Cir. 1966) ; Vico Insurance Co. v. New Orleans Public Service, Inc., 177 So.2d 425 (La.App. 4th Cir. 1965); Martin v. Slocum, 147 So.2d 454 (La.App. 2nd Cir. 1962); Schindler v. Gage, 59 So.2d 215 (Orl.La.App.1952); Sangree v. Grilletta, 42 So.2d 851 (Orl.La.App.1952). See also: Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., 125 So.2d 613 (La.App. 4th Cir. 1961); Potts v. United States Fidelity and Guaranty Co., 135 So.2d 77 (La.App. 2nd Cir. 1961); Dupuy v. Maury, 136 So.2d 302 (La.App. 4th Cir. 1962); Whatley v. Jones, 157 So.2d 351 (La.App. 3rd Cir. 1963); Hancock v. Sliman, 175 So.2d 437 (La.App. 2nd Cir. 1965). In Sangree v. Grilletta, supra, this rule is expressed as follows:
“We readily agree that a motorist, situated as was Grilletta, should not, immediately upon being faced by a favorable light, dash into the intersection without first making certain that there is not in the intersection some other vehicle which had entered it and had been unable to clear it before the change in the light. We so stated in Thomas v. Roberts, La.App., 144 So. 70.
“We, therefore, feel that Grilletta was at fault in entering the intersection immediately after the light had changed and without making certain that no other vehicle had entered it or was about to enter it.”
We have concluded that under the facts of the present case, the line of jurisprudence relied on by defendant has no application here. Clearly, Miss Abate was not already in the intersection when the light changed. Nor do we find she was “about to enter” the intersection, within the meaning of the cited cases, when Mr. Fruge started forward.
The testimony of two disinterested witnesses placed the Abate vehicle a minimum of 60 feet from the intersection when the light turned red for her. It would be unreasonable to require Mr. Fruge to see a vehicle at that distance and realize it was traveling at such an excessive speed it could not stop for the changed light.
Neither does it appear that the Fruge vehicle started across the intersection immediately after the light changed to green in his favor. The clear testimony of Miss North indicates that she had proceeded about half-way across the intersection before the Fruge vehicle started forward.
*103 Moreover, Mr. Fruge testified that it seemed to him that he looked in both directions before starting across the intersection but that he did not notice the Mustang until the collision occurred. Thus Fruge did not '“dart into the intersection” without taking any precautions as to approaching cars. He did look, and proceeded with caution, but simply failed to see the Abate car because of its distance from the intersection and its speed.
The final issue is whether the quantum of general damages awarded to Mr. and Mrs. Fruge is excessive.
The accident occurred on May IS, 1965. Plaintiffs had no severe symptoms of injury immediately and did not seek medical attention until May 28, 1965. Defendant makes much of this delay. However, both Mr. and Mrs. Fruge explained that they hoped the pain from their injuries would disappear. When it did not, they went to see Dr. Harry S. Snatic, a general practitioner in Lake Charles.
As to Mr. Fruge, Dr. Snatic found muscle spasm in the cervical area and diagnosed a moderately severe “whiplash” injury. He prescribed analgesics, muscle relaxants, diathermy and B-12 treatments. Muscle spasm was noted in Mr. Fruge by Dr. Snatic as late as January 15, 1966 and subjective complaints of periodic pain continued to about March of 1966.
Dr. Charles V. Hatchette, an orthopedic surgeon, examined Mr. Fruge on April 1, 1966 and concluded he had sustained a mild to moderate cervical strain from which he had recovered sufficiently to return to normal duties.
Under the circumstances, we find the award of $2,500 to Mr. Fruge was not an abuse of the great discretion vested in the trial judge as to the quantum of general damages.
Dr. Snatic found Mrs. Fruge sustained straining injuries to the muscles of her neck and low back, as well as an aggravation of a bursitis condition in the left shoulder. He instituted office treatment consisting of a great many diathermy treatments, muscle relaxants and drugs for pain. Actually, he was still treating Mrs. Fruge as of the date of the trial on May 5, 1966, which was about a year after the accident.
Dr. Hatchette also examined Mrs. Fruge on April 1, 1966 and expressed the opinion that she had completely recovered from any injury received in the accident.
We find the award of $3,000 to Mrs. Fruge for pain and suffering was also well within the range of the discretion of the trial judge. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.