JANVIER, Judge.
Plaintiff, Sidney J. De Jean, a guest passenger in- a Studebaker automobile, owned and driven by Martin J. Egert, sustained physical injuries when that car came into collision with a Buick automobile, owned and driven by Louis Hattier. The’ collision occurred shortly before three o’clock in the afternoon on May 6th, 1950, in the intersection of Marigny and Benefit Streets, in New Orleans.
The Egert Studebaker, in which plaintiff was a passenger, riding on the front seat alongside Egert, was on Marigny Street, going in the direction from Lake Pontchártrain towards the Mississippi River, and the Hattier Buick was'on Benefit Street, going in the direction from Elysian Fields Avenue towards Marigny Street, so thát,1 as the two vehicles neared the intersection, the Buick of defendant was approaching from the right-hand side of the Studebaker in which plaintiff was riding.
Benefit Street, on which defendant’s car was being operated, was paved with what ■ is commonly known as blacktop, and Mar-igny Street is not paved, but is what is called in the record a dirt street.
After the occurrence, the liability insurance carrier of Egert made a compromise with De Jean of his claim for damages against Egert as the operator of the car in which he was riding, and, in this settlement, De Jean reserved such rights as he may have had against the' alleged *624 joint tort-feasor, Hattier, and then brought this suit against Hattier, alleging that he had been guilty- of negligence which had had causal connection with the resulting accident, and praying for judgment against Hattier in the sum of $60,604.50.
From a judgment of the Civil District Court for the Parish of Orleans in favor of De Jean for $2,725, with interest and costs, Hattier has appealed suspensively.
Plaintiff has answered the appeal, praying for an increase in the amount awarded to the sum originally prayed for. •
The charges of negligence made by plaintiff against Hattier are that he was not keeping a proper lookout; that he did not •have his car under control; that he was travelling at a fast, illegal and reckless rate of speed; that he did not accord to Egert the right of way to which he was entitled as a result of having established a presumption of the intersection by entering it first; that he failed to Sound his horn as he approached the intersection; that his car. was not equipped with adequate brakes, and that he failed to see the Egert car, although there was nothing to obstruct his view as he approached the intersection.
Hattier, admitting the occurrence of the accident, denied that he had been in any way at fault, and averred that, as he neared the intersection, his car was being operated at a speed of about fifteen miles an hour, and that, after his car entered the intersection, the Egert Studebaker, in which De Jean was a passenger, drove into the intersection “at a speed of approximately fifty miles per hour.” Hattier further averred that he stopped his car immediately, but that the other car struck his on its .left side a terrific blow, and that the other car was going so fast that it could not be stopped by Egert until it had crossed the remaining portion of the street, had jumped over the gutter on the other side of the street, and over the curb, and had gone an additional fifty feet upon the lawn of a house located on the corner. Hattier further averred that, in the alternative that it appear that he was in any way at fault, De Jean himself was guilty of contributory negligence in that he permitted Egert “to drive him in a negligent and reckless manner * * * at a speed of approximately fifty miles per hour * * * although the street on which he was riding was a mud street, and although he was crossing at the time a paved street * * * all of' which the petitioner- knew, and made no effort to have said driver (Egert) drive his car prudently and in a proper and careful manner.”
There is no doubt of course that, whatever may have been the fault of Egert, there would nevertheless be liability in Hattier should it appear that he too was guilty of any negligent act which had causal connection with the accident, provided, of course, plaintiff was not himself guilty of contributory negligence which may be pointed to as a proximate cause.
That Egert was negligent there is not the slightest doubt. The record makes it clear that he did not stop as he approached the intersection and that he entered it at a speed of at least 35 or 40 miles an hour. And it is also clear that he did not look for any -car coming from his right, because had he done so he could not have failed to see the Hattier car which was approaching at a speed abundantly proved to have been not in excess of twenty miles per hour. It is true that there was a partial obstruction to the view over the intervening corner property, which obstruction resulted from weeds by which the view of the two drivers was intermittently interrupted. However, since he did not have the right of way over cars approaching from his right and over cars approaching on what he admits to have been “a right-of-way thoroughfare,” the greater the obstruction, the greater was his obligation to look at a time when to look would have been effective.
That the speed of the Stubebaker was grossly excessive is shown not only by the testimony of all of the witnesses except Egert and plaintiff, but also by the physical fact that after the impact, the Egert car continued across the street, across the gutter, across the curb, and across the lawn *625 for a total distance of almost one hundred feet.
In spite of the testimony of Egert and of De Jean to the contrary, it is also made certain that it was the Studebaker of Egert that struck the Buick of defendant. The physical fact is that the front end of the Studebaker of Egert sustained the principal damage, whereas the damage to the Buick of Hattier was on its left side. We cannot refrain from commenting on the illuminating answer which was made in argument before us when counsel for plaintiff, when asked which car struck the other, said that the left side of defendant’s Buick ■ran into the front of the Egert Studebaker.
As an evidence of the untrustworthiness of the testimony given by plaintiff, we point to his insistence that he was knocked out of the car by the impact. He says that he was knocked out of the car onto the street, and . that he was so badly injured that he could not walk, but that he crawled back to the Studebaker and assumed his position on the front seat. The Studebaker at that time was almost one hundred feet away from the point at which he had been knocked to the street, if he was knocked out as a matter of fact, and we cannot see the slightest reason for his wanting to crawl back to the car over the gutter, over the curb, over the lawn, to resume his seat in that car. Of course, his testimony that he did so is given to counteract the overwhelming testimony of practically all of the witnesses, who saw the accident or who arrived immediately afterward, that he was sitting in the front seat of the car immediately after the occurrence and was not knocked out of it at all.
Commenting upon the testimony itself, we find a tremendous preponderance to the effect that the Studebaker entered the intersection without stopping and at a very high speed, but that the Buick entered it at a slow and reasonable speed and came to a stop immediately when the impact occurred.
Eric J. Halverson, a claims adjuster for a liability insurance company, says that he witnessed the entire affair; that the Egert car hit the Hattier car; that no one fell out of either car, and that he was “positive” of this. He also says that the speed of the Hattier car was no more than twenty miles per hour, whereas the speed of the Egert car “conservatively” was thirty-five miles per hour. When asked whether the Egert car had stopped before entering the intersection, he said: “Oh, no. He Barreled right across after he hit Hattier’s car.” He says that Hattier entered the intersection first, and that it looked as though Egert “was just trying to beat him across the intersection.”
Marcus Tully, also an eye-witness, said that “ * * * this gentleman (Egert) looked like he was coming at a terrific rate of speed,” and that “ * * * he hit Hattier right in midships * * *.” He added that he had not seen anyone fall out of the car. He said that he saw the Egert car as it approached the corner; that it entered after the Hattier car was in the intersection, and that Hattier “was practically in the middle of the street or little over it when he was hit.”
Louis Lindehein says that the Studebaker car “was kicking up a pretty good bit of dirt,” and he added: “I’d say it was about 35 or 40 miles per hour.” He added that he would say positively that the Hattier car was almost over the intersection and that the Egert car, after striking it and after Egert had attempted to swerve to the left to pass in front of it, had continued a distance which was obviously almost 100 feet, He also said: “I’d say positively that Mr. Hattier was almost over the intersection from the point of impact.”
Louis Hattier, Jr., says, that he was' in his yard, which was about 200 yards from the scene of the accident; that he heard the impact and “hopped over the fence and ran to the corner,” and saw that his father had been involved in an accident. He says that it took him less than a minute — “I’d say 30 or 45 seconds to be exact,” and that when he arrived on the scene De Jean was seated in the Egert car, which “was up on the lawn.”
*626 We repeat that 'there is no doubt at all that Egert was at fault in many particulars, and we shall next consider the question of whether there was any negligence on the part of Hattier which had causal connection with the accident.
Hattier was on the paved street and he approached the intersection from the right-hand side of Egert, thus he was entitled to the right of way unless it should appear that Egert entered sufficiently in advance to justify the conclusion that he had preempted the intersection. C.C.S. No. 13,702, Art. V, sec. 15(a).
It must, of course, be conceded that in this case, as in a vast majority of inter-sectional collision cases, there would be no collision if both drivers, before proceeding into the intersection, should stop completely and each should look carefully in both directions to see that no other vehicle is approaching. It is true that in spite of the gross carelessness of Egert, had Hat-tier come to a full stop just as he was about to enter the intersection, and had he looked to his left he would have seen the Egert car and possibly could have realized that its speed was so great that its driver did not intend to stop or could not stop and accord to him the right of way. But we do not think that a motorist, who is entitled to the right-of-way, is called upon to exercise such extreme caution as this would have necessitated.
The situation is quite similar to that which is present where a motorist crosses an' intersection under protection of a green light. In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, the Supreme Court quoted with approval from Clark v. De Beer, 188 So. 517, in which the Court • of Appeal for the Second Circuit commented upon the obligation which, in that case, was placed upon a woman who drove her car into an intersection under the protection of a green light, — in other' words, who had the right of way. The Court said:
“ ‘ * * * It was not encumbent on her to persist in looking from side to side as she progressed. Her legal duty, in view of the fact that she had the right of way, was to operate her car cautiously and carefully at a moderate speed, to he reasonably diligent in her driving and to maintain a general observation of the intersection.’ * * * ”
The intersection was not completely “blind.” In the weeds there were spaces through which there was intermittently afforded a partial view of the other street.
We are convinced from the evidence that Hattier approached the intersection at a very reasonable speed, and that he looked to his left and then to his right and saw nothing to cause him alarm. He had no reason to anticipate that a motorist on a dirt street would approach what Egert himself has said wa9 a right of way thoroughfare at a speed so great that his car could not be stopped before reaching the intersection. When Hattier looked to his left, which is the direction from which the Egert car was approaching, it is, obvious from its speed that it was quite some distance away. Hattier then looked to his right and saw nothing and entered the intersection, but in the few intervening seconds, the Egert car, going at terrific speed, had eliminated the distance and had entered the intersection, and then crashed into the left side of the Hattier car when it was no longer possible for Hattier to do anything to avoid the accident. The Hattier car stopped immediately, whereas the Egert car, as a result of Egert’s efforts to swerve it around the front of the Hattier car, did swerve it to its left and did proceed across the street, across the gutter, across the curb, and across the lawn.
From the entire record we conclude that there was no negligence on the part of Hattier, and consequently that the judgment against him was erroneous.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost.
Reversed.