77 So.2d 887 (1955)
Mr. and Mrs. Jacob BROWN
v.
Ernest GONZALES et al.
No. 20351.
Court of Appeal of Louisiana, Orleans.
February 14, 1955.
*888 Harry R. Cabral and Harry R. Cabral, Jr., New Orleans, for plaintiffs-appellants.
Henry L. Oulliber, Jr., and Robert J. Pitard, New Orleans, for defendants-appellees.
REGAN, Judge.
The plaintiffs, Mr. and Mrs. Jacob Brown, instituted this suit against the defendants, Ernest Gonzales, the owner and operator of a taxicab, Nola Cabs, Inc., his liability insurer, Miss Eva Carey, the owner of a 1941 Ford Sedan, and Roy Schlaudeker, the operator thereof, endeavoring to recover the sum of $35,000, for the death of their son, Donald J. Brown, as the result of a collision in the intersection of St. Philip and Bourbon Streets, in the City of New Orleans, on December 26, 1952, at 2:45 a. m., between the taxicab in which the deceased was a passenger and the car driven by Schlaudeker.
The defendant, Eva Carey, pleaded the exception of no right or cause of action, which was maintained and the suit as to her dismissed.
Schlaudeker answered and asserted that he was a member of the United States Marine Corps on active duty outside of the State of Louisiana. He admitted the occurrence of the accident, but denied that he was guilty of any negligence in the premises and averred that the sole cause of the collision was the negligence of Gonzales, the driver of the taxicab.
Gonzales and Nola Cabs, Inc., answered and also admitted the occurrence of the accident, but insisted that Gonzales was not guilty of any negligence and asserted that the accident was caused only by the gross negligence of their co-defendant, Schlaudeker.
The plaintiffs voluntarily dismissed their suit against Schlaudeker.
From a judgment in favor of the defendants, Gonzales and Nola Cabs, Inc., dismissing plaintiffs' suit, they have prosecuted this appeal.
*889 The trial judge, in his written reasons for judgment, thoroughly analyzed both the facts and the law applicable to this case which, in our opinion, encompass the issues posed for consideration so fully, that we adopt them as our own.
"This is a suit by the parents to recover for the wrongful death of a 16-year old son. The son was killed while a passenger in a taxicab in an intersectional collision with an automobile in the City of New Orleans, at St. Philip and Bourbon streets, about 2:30 a. m., December 26, 1952. Both streets are paved, each approximately 22 feet wide. Bourbon Street is a one-way street running north, and St. Philip Street is a one-way street running east or towards the river.
"The taxicab was travelling north on Bourbon Street. The automobile was traveling on St. Philip Street towards the river. Bourbon is the favored or right-of-way street because traffic on St. Philip is arrested by a traffic `stop' sign on the southwest corner.
"The driver of the automobile was made a co-defendant, but was voluntarily dismissed from the suit by plaintiffs. He did not appear as a witness because, as explained, he is a U. S. Marine on duty in Korea.
"The only eye-witnesses to the accident were Gonzales, the driver of the taxicab, and two passengers who survived the accident. The latter appeared as witnesses for both sides. Plaintiff summoned them but defendant put them on the stand. I permitted both parties to examine and cross-examine them at length and ad libitum. These boys, in their very early twenties, together with their deceased friend, were returning home from an evening at a night club. They hailed the cab four or five blocks from the locus of the accident.
"While these young men made statements in writing for each of the attorneys of the parties and for the police, and vary in their estimate of the speed at which the taxicab was travelling 15 to 30 miles25 to 35 miles and 20 to 30 miles per hourthey both agree that the taxicab was travelling at a moderate speed, and that the automobile on St. Philip Street ran past the `Stop' sign and struck the taxicab, and that the automobile was travelling at a very fast rate.
"Gonzales, the taxicab driver, said he was travelling about 20 to 25 miles an hour, was looking ahead, did not see any headlights approaching from his left from St. Philip Street. When he entered the intersection about half-way, the automobile ran into him from his left, the front right light and fender of the automobile first contacting his left front fender, forcing him to the right and turning him around. He came to rest after his taxicab had travelled about 15 feet near a street light standard on the northeast corner, with his front facing Canal Street (or in the opposite direction) in an upright position. The automobile ran out St. Philip Street and stopped about 75 feet from the corner, upside down, blocking traffic on St. Philip Street.
"Much is made of the fact that flecks of white paint from the taxicab were imbedded on the right front side of the automobile. The only significant feature of this fact is to identify that the taxicab (painted white) had actually come in contact with the automobile. It was only natural to expect that, when the automobile contacted the taxicab and brushed across its front, that paint from the taxicab might become imbedded in the side of the automobile. That the front of the taxicab contacted the side of the automobile does not mean that the taxicab was at fault, because one automobile can negligently run into an intersection just in front of another, so that the latter will strike it on the side without being in anyway at fault.
"I find that the taxicab was travelling about 20 to 25 miles an hour, with *890 its lights burning, and that it entered the intersection first, when the automobile on St. Philip Street, traveling about 50 or 60 miles an hour ran past a `Stop' sign, in front of the taxicab, and that the taxicab was in no manner responsible for the collision and could not have avoided it.
"The southwest corner of the intersection, to which both cars were approaching, is blinded by a building. The automobile's headlights, even if burning brightly, which I doubt, could not be seen approaching Bourbon Street, because it was a considerable distance from Bourbon travelling as it was, about 2½ times the speed of the taxicab. Even if the taxicab driver (Gonzales) had seen the headlights of the approaching automobile, he had a right to assume that the driver would obey the `Stop' sign and the law before entering the intersection in violation of the taxicab's right-of-way. Maloz v. N[ew] O[rleans] Public Service, Inc. [La.App.], 65 So.2d 339; Porter [for and on Behalf of Porter] v. De Boisblanc [La.App.], 64 So.2d 864; Hooper v. [Toye Bros.] Yellow Cab Co. [La.App.], 50 So.2d 829; Koob v. Coop. Cab Co. [213 La. 903], 35 So.2d 849; De Jean v. Hattier [La. App.], 65 So.2d 623.
"A taxicab is not the insurer of its passengers but is responsible to its passengers if negligent in the slightest degree.
"As stated before, there is no dispute as to the high degree of care to which a common carrier is held with respect to a passenger and that any negligence, however slight, subjects the carrier to liability to a passenger, even assuming that the concurring negligence of a third party contributed primarily to the accident. However, if the carrier is free of all negligence and the third party is solely responsible, there is no liability on the part of the carrier. The law is well stated in Wilson v. Yellow Cab Co. [La.App.], 64 So.2d 463 and Culver v. [Toye Bros.] Yellow Cab Co. [La.App.], 26 So.2d 296. In Wilson v. Yellow Cab Co., the Second Circuit Court of Appeal of Louisiana held that the taxicab, though on a favored street, was guilty of negligence in not keeping a lookout while approaching a blind corner. In Culver v. Toye Bros. Yellow Cab. Co., Judge Janvier of our own Court of Appeal, in an intersectional collision that almost parallels this, held that the automobile driving on the favored street (Prytania Street), travelling 20 to 25 miles an hour was not guilty of any negligence whatsoever when an automobile on an unfavored street, controlled by a `Slow' sign, suddenly entered the intersection at over 45 miles an hour and crashed into the automobile on Prytania Street. Strangely enough, the offending automobile on the unfavored street in the Culver case was the taxicab and it was held solely responsible for the collision, and the automobile on the favored street was held not responsible in the slightest degree for the collision, the taxicab on the unfavored street being solely responsible.
"Here, the facts are practically the same except that the order is reversed. The taxicab here was on the favored street, travelling not more than 20 to 25 miles an hour, and the automobile was on the unfavored street controlled by a `Stop' sign and entered the intersection travelling 60 to 65 miles an hour when the collision took place.
"In Green v. Baton Rouge Bus Co., Inc. [La.App.], 66 So.2d 344, the Court of Appeal of the First Circuit had occasion to hold, in keeping with our jurisprudence, that a public carrier must exercise the highest degree of care but is not the absolute insurer of the safety of its passengers, that the burden of proof is upon the carrier to show itself free from fault. The carrier's liability is based upon negligence, and, if it appears there was no *891 negligence whatsoever upon the part of the carrier, there is no liability.
"In Gross v. Teche Lines, Inc. [207 La. 354], 21 So.2d 378, our Supreme Court affirmed the rule that it is not negligent not to discern that another will suddenly and without warning violate the traffic law by suddenly dashing out in front of the bus.
"I find the unfortunate accident was due solely and only to the negligence of the driver of the automobile. So the taxicab driver and owner must be absolved.
"As the only responsible defendant has been dismissed from the suit by voluntary motion of plaintiffs, their suit against the taxicab driver and owner or insurer must be dismissed."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.