JANVIER, Judge.
At about 1:50 o’clock in the early morning of April 2, 1955, there was an automobile collision in the intersection of Avenue B and Fifth Street, in Marrero, which is on the west side of the Mississippi River opposite New Orleans.
The cars which were involved were both Chevrolets. The one on Avenue B was owned by the plaintiff, Samuel L. Steele, Sr., and was being driven by his son, Samuel L. Steele, Jr., who, at that time, was 16 years of age. No one was with him in the car. The other car was owned by Joseph C. Jennings and was being operated by his wife, Mrs. Vera C. Jennings, who was alone in the car and who was on a family mission. Both cars were practically demolished and young Steele sustained serious physical injuries. Mrs. Jennings was hurt also.
Jennings had secured a policy of liability insurance from State Farm Mutual Insurance Company and Steele, Sr., on his own behalf and for the use and benefit of his minor son and, alleging that the accident had been caused by negligence of Mrs. Jennings and that young Steele had been in no way at fault, brought this suit against Jennings, Mrs. Jennings, and the State Farm Mutual Insurance Company. He prayed for judgment in his own behalf in the following amounts: Medical expenses for treatment of his son’s injuries, $275; future medical expenses in connection with his son’s injuries, $500; loss of his automobile, $1,800; and on behalf of his minor son he prayed for judgment for $10,000 for pain and suffering and $10,000 for permanent disfigurement and future pain and suffering.
The defendants all denied that Mrs. Jennings had been in any way at fault and averred that the accident had been caused solely by negligence of young Steele, and in the alternative, that it should appear that Mrs. Jennings was in any way at fault, they specially pleaded contributory negligence of young Steele as a bar to recovery.
There was judgment in favor of plaintiff individually and for the use and benefit of his minor son and against all defendants, solidarily, in the sum of $6,550. In the *710 judgment the amount awarded was not divided between the father individually and the amount awarded for the benefit of the minor. Counsel for defendants-appellants have directed our attention to this fact and also to certain obvious errors in the judgment and reasons for judgment, and they point to these errors as evidence that the Judge did not carefully analyze the evidence.
We do1 not know just what these errors indicate, but point them out as counsel for defendant so confidently rely on them as indicating that the judgment is erroneous in its entirety.
In the first place, it is shown that although the claim presented by the plaintiff is divided into two parts, one on behalf of the father himself, and one for the use and benefit of the son, the judgment, as already stated, does not declare how much of the amount awarded is to go to the father and how much to the son.
Next, counsel show that, in his reasons for judgment, the District Judge stated that “the sum of $1800 sought for said automobile is not unreasonable.” Counsel direct attention to the fact that this statement is made in spite of the fact that in the record there is a stipulation to the effect that the automobile of the plaintiff involved in this accident “represents a claim of $1304.-44.”
Counsel also point to the fact that in the reasons for judgment it is stated that “plaintiff herein should be reimbursed the sum of $250, the amount paid for medical expenses of his minor son,” although the stipulation in the record shows that it was agreed that the medical expenses totaled $225. It is also shown that in the award $500 is allowed for “future medical expenses,” whereas, but for the allegation in -the petition, there is not one word of testimony to justify this award and absolutely nothing, except possibly the nature of the injuries, to indicate that there will be any future medical expenses.
And counsel especially point to the fact that, although there was no reconventional demand, the District Judge, in the reasons for judgment, made the following statement:
“The Court does not believe that there is any merit in the reconventional demand * *
When we come to consider the record, we conclude that it is abundantly shown that young Steele was grossly at fault, and that without his fault the accident could not have occurred.
It is particularly charged that Mrs. Jennings was operating the car at too high a rate of speed and that she did not stop before entering the intersection although she was faced with a “Stop” sign. And, on behalf of defendants, it is charged that young’ Steele was grossly at fault in that he entered the intersection without looking and at an excessive rate of speed.
Since there is no claim on behalf of Mr. and Mrs. Jennings, in other words, no re-conventional demand, — even if it be conceded arguendo that Mrs. Jennings was at fault in failing to stop at the Stop sign and that her speed was somewhat excessive— there can be no recovery on behalf of plaintiff for the negligence of young Steele was a contributing cause of the accident.
The record does not definitely show that Mrs. Jennings did not stop before entering the intersection and it does not positively show that her speed was excessive. • She says that she did stop and that she entered the crossing at a reduced speed.
Young Steele says that she did not stop but he admitted that he did not see the Jennings car until it was within six feet of his car. It thus appears that he could not positively state that Mrs. Jennings had not stopped for the crossing.
It is true that in the report of the police officer appears the statement that Mrs. Jennings “failed to stop for the Stop sign,” but when the police officer was questioned, *711 it appeared that he had no information whatever on which to base that statement as he had not questioned Mrs. Jennings on that subject and no one else had told him that she had failed to stop. In fact, this officer says that he based his statement, to some extent, on the fact that after the accident he saw a Stop sign which had been knocked down and which was lying on the ground. The record shows beyond any possible doubt that the Stop sign which he saw was not the sign which faced Mrs. Jennings but was another sign which was on a large light or telephone wire post, which was knocked down not by the Jennings car but by the Steele car after the impact.
It is possible that Mrs. Jennings may have been at fault, but again we repeat that, even if she was at fault, the contributory negligence of young Steele would bar recovery.
The Traffic Ordinance No. 10,085 of the Parish of Jefferson provides: “That it shall be unlawful for any person to operate any motor vehicle at a speed in excess of twenty (20) miles per hour on the following streets * * Among the streets listed is Avenue B on which Steele was driving his father’s car. When questioned as to his speed, Steele said: “I was going anywhere from fifteen to twenty miles an-hour.” The facts belie this statement. After the impact, the car which he was driving continued across the intersection, jumped over or plowed through a rather deep ditch, knocked down a heavy post, already referred to, crashed through a substantial wire fence, and did not come to a stop until it had entered the adjacent yard with one of the fence rails sticking five feet through its windshield.
Counsel for plaintiffs seek to persuade us that the Steele car entered the intersection at reasonable speed, and that it was then struck so violently by the Jennings car that it was given tremendous added momentum and that that is what caused it to go the additional distance and do the damage already referred to. However, it is shown that the Jennings car proceeded only a short distance after the impact and stopped in a ditch which, although not the identical ditch which the Steele car crossed, was of about the same dimensions. It thus seems impossible that the Jennings car, which itself continued only a short distance, could have struck the Steele car with sufficient force to have catapulted it a tremendous distance beyond the point at which the Jennings car stopped.
In addition to Steele’s having entered the intersection at an excessive rate of speed, we think that he was negligent in not noticing that the Jennings car had entered, or was about to enter the intersection. The record leaves no doubt at all that the intersecting corner between the two vehicles offered no obstructions to view and that either driver could easily have seen the other car had either been at all careful.
It is true that Steele, Sr., says that he went to the scene afterwards and found that when, on Avenue B as close to the intersection as four feet from it, he could not see to his right more than 15 feet. This statement is unquestionably absurd since there is other evidence that, for some distance back, a driver on Avenue B could see out Fifth Street for a distance of from 60 to 100 feet. And the photographs indicate, as already stated, that there was really no obstruction to the view at all since the house on the corner is evidently located 15 or 18 feet from the edge of the street.
On several occasions the action of automobiles after such impacts has been pointed to as indicating speed and we think that such decisions are applicable here. In DeJean v. Hattier, La.App., 65 So.2d 623, 624, appears the following:
“That the speed of the Studebaker was grossly excessive is shown not only by the testimony of all of the witnesses except Egert and plaintiff, but also by the physical fact that after the impact, the Egert car continued across the *712 street, across the gutter, across the curb, and across the lawn for a total distance of almost one hundred feet.”
Counsel for plaintiff before us argue that, since a Stop sign faced Mrs. Jennings, young Steele was under no obligation whatever to. look to- his right, that he was not even required to glance in that direction and they confidently rely upon the decision of the Court of Appeal for the First Circuit, in Gautreaux v. Southern Farm Bureau Casualty Company, La.App., 83 So.2d 667, 669, in which appears the following :
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the side-streets, but instead concentrate most of their attention on the path ahead, relying on their legal ‘right of way’.- Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
We do not disagree with that statement, provided it not be extended to such an extent as to indicate a view that under no circumstances should a driver, under such facts as are here shown, even glance in the direction from which he would be protected by a Stop sign. It must be remembered that the speed of Steele should ha'-'e been slow (not over 20 miles an hour) that the accident happened at night, and that the lights on the Jennings car were burning, and that therefore even the slightest glance, and, in fact, instinct alone, should have indicated to young Steele that the other car was approaching the intersection.
It is not charged and no attempt was made to show that young Steele was under the influence of liquor. It does appear that he had spent a good part of that evening at a cocktail lounge, that after that, he was for sometime with friends, and while he says that he had not been drinking, he did admit that he had had “about a half of a bottle of beer, maybe a little more.”
Under all the circumstances, we are convinced that young Steele was himself grossly at fault and that this negligence on his part bars recovery by plaintiff.
The judgment appealed from is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost.
Reversed.