JANVIER, Judge.
Mrs. Mary Abadie, wife of Frank Fu-getta, and her daughter, Mrs. Mary Louise LeSage, while passengers in a taxicab of defendant, Checker Cab Company, sustained physical injuries at about 2:45 o’clock on the afternoon of October 6, 1955, when the cab, on its way down Bourbon Street, in New Orleans, was run into at the corner of Bienville Street by a large truck of M. G. Loubat, who does business as M. G. Loubat Truck Service, the truck being on its way out Bienville Street.
Mrs. LeSage at the time was almost eight months pregnant, and she and her mother were on their way home from a visit which Mrs. LeSage had made to her obstetrical specialist.
This suit was filed by Mr. and Mrs. Le-Sage and Mr. and Mrs. Frank Fugetta, Sr., originally only against M. G. Loubat, the owner of the truck, and his liability insurer, New Amsterdam Casualty Company. Three days after the filing of the original petition, a supplemental petition was filed and Checker Cab Company was added as a defendant.
Mrs. Fugetta prayed for solidary judgment against all three defendants in the sum of $15,000. Mr. Fugetta, because of the medical and hospital expenses made necessary by the injuries of Mrs. Fugetta, prayed for solidary judgment against all defendants in the sum of $1,937.81. Mrs. Le-Sage prayed for solidary judgment against all defendants in the sum of $5,000, and Mr. LeSage, because of medical expenses alleged to have been made necessary by the injuries of Mrs. LeSage, prayed for solidary judgment in the sum of $145. All defendants prayed for and obtained trial by jury.
*98 They alleged that the driver of the Loubat truck had been at fault in failing to stop at a traffic stop sign which faced him as he neared the intersection of Bourbon Street; in that he “failed to maintain a sharp lookout and they also charged that there was negligence in defendant Loubat in that the •brakes on his truck were not in working condition.
Although, in their original petition, plaintiffs made no allegation of negligence as against the operator of the Checker Cab Company, in their supplemental petition they charged that he “failed to maintain a sharp lookout;” that he was negligent in operating the cab at a speed of 25 miles per hour; that “by the exercise of care and caution he could have anticipated and seen the Loubat truck, applied his brakes, and could have avoided the said impact.” They also alleged that the brakes of the taxicab were defective.
Loubat and his insurer, New Amsterdam Casualty Company, denied that the driver of the truck had been in any way at fault and averred that the “sole cause of the accident was the negligence of the driver of the Checker Cab in failing to keep a proper lookout and in failing to keep control over his vehicle * * Loubat and his insurer also averred that, in the alternative that it appear that there was any negligence on the part of the driver of the truck, Mrs. Fugetta and Mrs. LeSage were guilty of contributory negligence “in failing to protest the reckless driving of the driver of the Checker Cab.”
The Checker Cab Company denied that the driver of the cab had been in any way at fault, and averred that the accident had been caused solely by negligence of the operator of the Loubat truck “in failing to stop for the stop sign * * *,” in “failing to yield the right of way * * *,” and “in operating a vehicle with defective brakes.”
The verdict of the jury dismissed the suit as against Checker Cab Company, but was against M. G. Loubat' and New Amsterdam Casualty Company in solido; in favor of Mrs. Frank Fugetta in the amount of $2,500; in favor of Frank Fugetta in the amount of $1,170; in favor of Mrs. Leo LeSage in the amount of $1,000, and against Leo LeSage dismissing his claim for medical expenses.
The verdict was unanimous insofar as the several amounts awarded were concerned, but so far as the Checker Cab Company was concerned it was ten to two in favor of the dismissal of the suit as against that company.
There was judgment in accordance with the verdict and all plaintiffs have appealed. The defendants cast did not appeal independently and did not answer the several appeals of plaintiffs.
There is no doubt whatever as to the negligence of the driver of the Loubat truck and no real controversy over this question. In fact, since there have been no appeals by Loubat or his insurer, it is evident that liability is conceded. It is definitely shown that the truck did not stop for the stop sign before entering the intersection and that the brakes of the truck were completely defective and would have been almost of no effect at all had they been applied.
As he neared the corner of Bourbon Street, Wilmer Cooley, the driver of the Loubat truck, was faced by a stop sign and at the opening of the trial the following concession was made by counsel for Loubat and New Amsterdam Casualty Company:
“ * * * it is stipulated and agreed that Bourbon is the right of way street, because there is a stop sign at Bourbon, on Bienville, arresting traffic on Bienville Street, which means before any vehicle can enter Bourbon Street it must come to a stop and then proceed.”
Since plaintiffs have appealed from the judgment not only on the ground that" *99 the amounts awarded are too small, but also on the ground that the Checker Cab Company should not have been held not liable, the Loubat Company and New Amsterdam Casualty Company are interested in attempting to have the judgment in favor of the other defendant, Checker Cab Company, reversed for the reason that if it should be ultimately held that there is solidary liability in all of the defendants, any one of them might demand pro tanto contribution from the others. It is well settled that where joint tort-feasors are held solidarily liable, though any one of them may be required by the plaintiff to pay the entire judgment, that one may compel the others to contribute on a pro tanto basis. Quatray v. Wicker, 178 La. 289, 151 So. 208. Therefore, because of this and since plaintiffs have appealed in an effort to have the Checker Cab . Company held solidarily liable, it becomes necessary that we analyze the evidence as to whether there was fault on the part of the driver of the cab.
There is, however, in the record nothing which, to any serious extent, contradicts the testimony of the driver of the cab which is to the effect that, as he approached the corner at a speed of 20 miles per hour, he reduced his speed and “rolled” up to the corner at about 15 miles per hour; that he saw the truck and knew that it was “still back far enough that he (the truck driver) could have stopped * * *.”
Mrs. Fugetta says that the cab “was not going very fast * * * about 18 miles per hour.” And Mrs. LeSage says that the driver of the cab “was not going fast.”
The cab driver had the right of way; he knew that the truck should stop, and he knew that its speed was such that it could stop before it reached the intersection. Certainly he was justified in assuming that it would stop, and since he had the right of way there was no reason why he should not have proceeded as he did at moderate speed into the intersection. As a matter of fact, he had almost completed the intersection when the truck, unable to stop because of the condition of its brakes, rolled into the right rear of the cab.
In Brown v. Gonzales, La.App., 77 So.2d 887, we held that the driver of the taxicab on a favored street, traveling at reasonable speed, was not negligent in not anticipating that a vehicle on the less favored street would violate a stop sign and enter the intersection and crash into the taxicab which was on the favored street. We cited Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378, stating that in that case the Supreme Court “affirmed the rule that it is not negligent not to discern that another will suddenly and without warning violate the traffic law * * * ” [77 So.2d 891.]
In Thomas v. Checker Cab Company, 229 La. 1079, 87 So.2d 605, 607, the Supreme Court held that the driver of a vehicle on a favored street “was not called upon to anticipate that a vehicle approaching from his right would be operated at an unlawful rate of speed and in an improper manner.” We paraphrase this statement by saying that the taxicab on the favored street here was not called upon to anticipate that a vehicle approaching from his right would violate a stop sign and crash into the vehicle on the favored street. If the truck had been approaching at a speed which would indicate that it could not stop, the situation would have been quite different, but since its speed was reasonable and since it could have been stopped, the driver of the taxicab was not at fault in entering the intersection at reasonable speed.
Since there was no fault in the driver of the taxicab, there remains only the question of whether the amounts awarded to the several plaintiffs are correct.
Though the plaintiff, Leo LeSage, appealed and complains that he should have been awarded $145 as the cost of medical attention to Mrs. LeSage, the record does *100 not show that he actually paid or became liable for any amount for medical expenses. It is true that the evidence shows that, in all probability, Mrs. LeSage at some time in the future may require minor surgery, and Dr. Battalora, when asked what would be the amount of the “hospital bill and all,” answered: “Probably around $250.00.” Counsel for plaintiffs conceded that no claim for future medical expenses had been made and that therefore there could be no recovery based on this particular item.
There is no complaint about the amount of $1,170 awarded to Mr. Fugetta for medical and hospital bills, and counsel for plaintiffs also concedes that this amount is correct.
When we come to consider the injuries sustained by Mrs. LeSage, we find that they were fortunately not particularly serious. She sustained “a large bruise with an underlying blood clot” on the left thigh, and the doctor who first treated her merely said that she was emotionally upset and required “sedation” and that there was a swelling on the “lateral aspect of the upper third of her left thigh.” However, at the time of the trial that condition had not been completely eliminated. There was some fear that she might lose the child which was about to be born, but this did not happen.
Realizing that there was no doubt considerable anxiety concerning the possibility that there might be a miscarriage or that the unborn child might have sustained injury, and noting also that at the time of the trial there still remained a condition that might, in the indefinite future require minor surgery, we feel that the amount awarded to Mrs. LeSage is slightly inadequate and that it should be increased to $1,500.
The injuries to Mrs. Fugetta were considerably more serious. She was first taken to Charity Hospital and on that evening removed, apparently at the request of a doctor of the defendant, to the Mon-telepre Hospital where she remained for three days, she then was taken to her home and later at her own request, was taken to Baptist Hospital where she remained from November 7, 1955 until December 2, 1955, a period of 45 days. She was still under treatment at the time of the trial, the principal complaint being “a swelling at the left knee” and the orthopedic surgeons all agreed that in the left knee there were “small horn like projections” and a “small loose piece of cartilage.” The doctors agreed that recovery from that condition would require at least an additional year. In view of all of these circumstances we think that the award of $2,500 is inadequate and should be increased to $4,000.
In his brief counsel for plaintiffs asks that the fees of the two doctors be taxed as costs and that the fee of each be fixed at $200.
Insofar as the taxing of the fee of the experts is concerned, we merely remark that both of the doctors mentioned had treated either Mrs. Fugetta or Mrs. LeSage or both and that most of their testimony concerned the treatments rather than the rendering of expert opinions. We believe that under the circumstances all that should be done here is that all costs should be taxed against defendants, M. G. Loubat, doing business as M. G. Loubat Truck Service, and New Amsterdam Casualty Company, and that whether or not these fees should be taxed as costs should be determined on a rule to tax costs in the district court.
Accordingly, the judgment appealed from, insofar as it awarded to Mrs. Le-Sage $1,000, is amended by the increase of that award to $1,500, and insofar as it awards $2,500 to Mrs. Fugetta, it is amended by the increase of that award to $4,000. In all other respects the judgment appealed from is affirmed at the cost of defendants, M. G. Loubat, doing business as M. G. Loubat Truck Service, and New Amsterdam Casualty Company, in solido.
. Amended and affirmed.