SAVOY, Judge.
The instant case, together with cases No. 765, Jeffers v. United States Fidelity and Guaranty Company and Allstate Insurance Company, La.App., 149 So.2d 428; and No. 766, Jeffers v. United States Fidelity and Guaranty Company, La.App., 149 So.2d 429, were consolidated for purposes of trial in the district court and were argued in this Court as consolidated cases. Separate judgments were rendered in each case in the district court and separate decrees are being handed down this date by this Court in the three (3) cases.
The instant case and cases Nos. 765 and 766 are actions in tort resulting from an *425 intersectional collision which occurred at approximately 2:00 P.M. on February 20, 1961, at the northeast corner of the intersection of Kirkman and Seventh Streets in the City of Lake Charles, Louisiana, which was controlled by a semaphore light (traffic light). Kirkman Street runs north and south, and Seventh Street runs east and west. Shortly prior to the accident, Andrew Jeffers was driving his car in a northerly direction on Kirkman Street and had as occupants with him in his car, his wife, Mrs. Betty Bobbett Jeffers, who was seated next to him; and Miss Sittig, a minor, seated to the right of Mrs. Jeffers. At the time Jeffers was driving his vehicle, Fred G. Bostwick was driving a car owned by Commercial Finance Company in a westerly direction on Seventh Street.
As a result of the accident, Jeffers, his wife and Miss Sittig, received personal injuries, and both vehicles driven by Jeffers and Bostwick were damaged.
In suit No. 764, Robert Sittig, the father of the minor child, Shirley Sittig, sued, in his individual capacity and as administrator of the estate of his minor daughter, Allstate Insurance Company and United States Fidelity and Guaranty Company for expenses he had incurred because of the accident and for physical injuries suffered by his daughter.
In suit No. 765, Mrs. Jeffers sued the insurer of her husband’s car, Allstate Insurance Company, and the insurer of the car owned by Commercial Finance Company and driven by Bostwick, namely, United States Fidelity and Guaranty Company, for personal injuries sustained by her.
In suit No. 766, Jeffers sued United States Fidelity and Guaranty Company for personal injuries, property damages and expenses incurred as head of the community on behalf of his wife as a result of the aforesaid accident.
After a trial on the merits in the three (3) cases, the district judge found the drivers of the Jeffers and Bostwick cars both negligent.
Each driver had contended in his pleadings filed in the district court that when he had entered the intersection, the traffic light was green for him. The district judge did not make a determination in his written opinion which of the drivers had entered the intersection when the traffic light was green. The district judge concluded that the change of the signal light occurred at' a time when neither driver could rely upon the traffic signal to give him the right-of-way regardless of other traffic approaching or in the intersection. In line with his holding, the judge, in suit No. 764, rendered judgment in favor of plaintiff and against defendants, Allstate Insurance Company and United States Fidelity and Guaranty Company, in solido, in the sum of $2,635.85 with interest from judicial demand.
In suit No. 765, the trial judge rendered judgment in favor of Mrs. Jeffers against Allstate Insurance Company and United States Fidelity and Guaranty Company, in solido, in the sum of $7,500.00 with interest from judicial demand.
In suit No. 766, the trial judge rejected the demands of Jeffers and dismissed his suit at his costs.
In suit No. 764, both insurance companies appealed from the judgment of the district court.
In suit No. 765, both insurance companies appealed from the judgment of the district court.
In suit No. 766, plaintiff appealed from the judgment of the district court rejecting his demands and dismissing his suit.
At the time of the accident, in addition to the vehicles and persons already mentioned, one Clifford Kennerson was operating his car and it was in a stationary position on Seventh Street facing east, he being at the southwest corner of the intersection of Seventh and Kirkman Streets.
*426 All of the plaintiffs testified positively that the traffic light was green prior to and at the time the Jeffers car entered the intersection. Bostwick and Kennerson testified that the traffic light was red when the Jef-fers vehicle entered the intersection.
Bostwick testified he first saw the Jeffers car when it was approximately 100 to ISO feet from the intersection, and that at the time his car was approximately the same distance from the intersection. He also testified that at the time, he was traveling at about 15 to 20 miles per hour.
Jeffers estimated his speed at about 35 miles per hour prior to the impact and 30 miles per hour at the time of the impact.
It had been raining on the day of the accident, and the yellow or caution light on Kirkman Street was not working at the time of the accident. While Kennerson testified that the light was red when Jeffers entered the intersection, in a statement signed by him accompanied by a diagram of the intersection and the position of the respective cars, he stated the Jeffers car had already entered the intersection when the traffic light turned green for him (Kennerson). This statement, with the diagram of the street and vehicles, is in the record in suit No. 764.
This testimony together with the positive testimony of the three (3) plaintiffs that the light was green prior to and at the time that Jeffers entered the intersection, convinces this Court that when Jef-fers entered the intersection, he did so on a green light. At the time of the impact Kennerson had made no effort to cross the intersection, which fortifies the opinion of this Court that the light' was green when Jeffers entered the intersection.
We find certain statements made by Bost-wick to be inconsistent. If, shortly before the accident, the cars were of equal distance from the intersection as Bostwick testified, the Jeffers car would have completed the intersection before Bostwick would have reached it for Bostwick testified he was traveling 15 to 20 miles per hour whereas Jeffers testified he was traveling 35 miles per hour. Bostwick also admitted that he had given a statement after the accident that the traffic light changed from red to amber to green, but after returning to the scene of the accident, he discovered that he was in error and changed his testimony on this phase of the case.
The City policeman who investigated the accident was of the opinion that a speed of 35 miles an hour at the intersection of the accident was not excessive.
In the case of Potts v. United States Fidelity & Guaranty Company, (La.App. 2 Cir., 1961), 135 So.2d 77, the court said:
“The rule is that a motorist must not enter an intersection after a ‘red’ light turns to ‘green’ until sufficient time is allowed for cross traffic already in the intersection to clear. Schindler v. Gage, La.App.Orleans, 1952, 59 So.2d 215; Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., La.App. 4th Cir., 1961, 125 So.2d 613.”
The Supreme Court, in the case of Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919, said:
“Since Adams was proceeding on a favorable light under a semaphore system, he was not held to the same degree of care and vigilance as if no such system prevailed. Kientz v. Dennery, supra; Cf. Breaux v. Allstate Insurance Co. of Chicago, 232 La. 845, 95 So.2d 333. He had the right to assume that the signals were understood and would be obeyed by the motorist driving on the unfavored light. Under such assumption, we do not find that Adams was negligent in not looking at the traffic which was presumed to be stopped for the red light.
“Since the semaphore lighting system had to be obeyed, and herein both lower courts found Mrs. Simmons a *427 transgressor for proceeding on a red light, it necessarily follows that it was incumbent upon Adams to pay attention to the light facing him, otherwise, he could have been a transgressor if the light had changed against him.
“We disagree with our learned brothers’ conclusions that Adams’s concentration of view on the semaphore indicated a lack of alertness and observance.
“It is our view that Adams was strictly adhering to the traffic rules and regulations, operating his truck at a lawful speed in the belief that the law would also be obeyed by others. The acts of negligence attributed to him while operating his truck in obedience to positive law do not convince us that they were most substantial, and that they were such direct factors that without them the accident or intersectional collision would not have occurred, in view of the circumstances then existing.”
In the case of Youngblood v. Robison, 239 La. 338, 118 So.2d 431, the court said:
“This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.
“In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, a case, very similar to this one, the Court re-, fused to hold a truck driver proceeding on a green light guilty of negligence for failing to observe that plaintiff’s husband was not going to stop in obedience to a red signal light, which was not working at the time. In support of the ruling the, opinion cited Manuel v. Bradford, La.App., 166 So. 657; Clark v. De Beer, La.App., 188 So. 517; Seiner v. Toye Brothers Yellow Cab Company, La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, La.App., 22 So.2d 473, and concluded by adopting with approval the following observations:
“ ‘ “We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.” ’ ”
In suit No. 764 the court made an award to plaintiff individually and on behalf of his minor daughter in the sum of $2,635.-85. We think the award is in line, with that set forth by the jurisprudence -of the State. We hereby adopt as our own the district judge’s reasons for judgment in making said award:
“Miss Shirley Sittig sustained an oblique fracture of the distal fibula, with no displacement. The fracture was satisfactorily reduced and her right leg was placed in a cast for about five weeks. She suffered some .pain and swelling in her leg and the cast was changed. She experienced difficulty in walking upon removal of the cast and did not walk normally until after an additional two weeks. She complained, at the trial, of stiffness and discomfort when the weather changes. It was testified that Shirley, who was twenty years old, enjoyed dancing, but was not able to dance until April 24, 1961. She was incapacitated for a total of about eight weeks, although her last medical treatment by Dr. Morris was on March 31, 1961, about six weeks following the accident.
*428 “Dr. Morris referred to the possibility of some residual disability in her leg, though this was not certain enough to justify any serious consideration by the Court. Dr. C. V. Hatchette, an orthopedic surgeon, examined her on September IS, 1961, and found no evidence of any temporary or permanent disability. He was even unable to determine that she had sustained any fracture, which would indicate an excellent reduction of the fracture she did sustain.
“Medical expenses incurred in connection with her injuries were established as follows: Dr. Wilson D. Morris — Eighty Dollars ($80.00); Lake Charles Memorial Hospital — Fifty-Five and 85/100 Dollars ($55.85); or a total of One Hundred Thirty-Five and 85/100 Dollars ($135.85). No award is made for loss of earnings by Miss Sittig, as such loss was not established. She had earned $15.00 per week as a baby sitter on occasion, but she had been living with the Jeffers family unemployed for three weeks prior to the accident and intended to seek employment on the date of the accident.
“The award for Miss Sittig’s injuries, pain and suffering is fixed in the sum of Two Thousand Five Hundred Dollars ($2,-500.00); see Chavers, et ux v. A. R. Blossman, Inc., et al. [La.App.], 45 So.2d 398; Deck v. Page [La.App.], 77 So.2d 209; Fugetta v. Loubat [La.App.], 97 So.2d 96; Meade v. Cutrer [La.App.], 100 So.2d 299.”
It might be noted that counsel for plaintiff did not ask for an increase in the award, and neither of the defendants complained of the award.
For the reasons assigned, the judgment of the district court is affirmed insofar as it rendered judgment in favor of plaintiff, Robert Sittig, individually and as administrator of the estate of his minor daughter, Shirley Sittig, against United States Fidelity and Guaranty Company; and, it is reversed and annulled insofar as it rendered judgment against Allstate Insurance Company, and judgment is hereby rendered in favor of defendant, Allstate Insurance Company, and against plaintiff, Robert Sit-tig, individually and as administrator of the estate of his minor daughter, Shirley Sittig, dismissing his suit and rejecting his demands against said defendant, Allstate Insurance Company.
United States Fidelity and Guaranty Company is to pay all costs in both courts.
Affirmed in part, reversed in part and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.