YARRUT, Judge,
This appeal is from a judgment of the District Court dismissing Plaintiffs’ suit against Defendants to recover for personal injury suffered, medical expenses, and loss of wages as a result of an accident which occurred while Plaintiffs Upkins and Allen were passengers in a taxicab, and Plaintiff Marshall was alongside the cab leaning through the cab window to hand the driver the fare for his co-plaintiffs.
Defendants are the driver of the cab (Dean), its liability insurer (Nola Bonding Co.), and Downs, the driver of the automobile which ran into the taxicab’s rear while the cab was stopped alongside other automobiles which were parked along the sidewalk curbing.
The accident occurred on August 3, 1962 about midnight on the river-side of South Claiborne Avenue between Melpomene and Thalia Streets in New Orleans.
The cab driver responded to a call to stop at the Cozy Corner Restaurant. He could not stop for his passengers next to the sidewalk curb near the Restaurant entrance because other automobiles were already parked there, but did stop alongside an automobile near the front of the Restaurant, about forty feet from the intersection, and blew his horn to attract his prospective passengers. Plaintiffs Allen and Upkins came out, entered the cab and sat in the rear. Plaintiff Marshall came out from the Restaurant and, while leaning through the window to give the driver the ladies’ fare, Defendant Downs’ automobile came around the corner at 25 miles per hour and plowed into the rear of the taxicab, injuring all Plaintiffs.
In describing the location, the police officer who witnessed the accident testified:
“A. There are no marked lanes there at this particular point. It has a street on either side of the South Claiborne overpass that runs to Earhart Boulevard. The street is approximately twenty-six feet wide. *258 It has room for a parked automobile on the right and two automobiles to pass.
# * * * * *
“Q. South Claiborne Avenue at that intersection is a well lighted thoroughfare ?
“A. Yes, it is.
“Q. It has fluorescent lights?
“A. Yes.
"Q. There was nothing in the way of the oncoming vehicle which ran into the taxicab to obstruct his vision?
“A. No, as far as I could see.”
When he was asked whether the defendant automobile driver (Downs) gave any reason why he could not see the parked automobile, he answered:
“A. No, the driver couldn’t give any reason why he didn’t see it. He did say that just before striking it, when he noticed it in front of him, he applied his brakes, but he couldn’t avoid striking it. He skidded for about six feet.
“Q. Now, were there lights on the taxicab ?
“A. Yes, there were.
“Q. There were lights on the taxicab; now, was there ample room to the left of the taxicab for the vehicle to pass ?
“A. Yes, there was sufficient room.”'
Plaintiffs charged the taxicab driver with negligence, to-wit:
“1. In that Dean negligently and carelessly stopped his cab in a lane of moving traffic near a corner while knowing or should have reason to know that this exposed his passengers (and/or anyone else doing business with the cab such as was plaintiff, Marshall) to hazards and dangers thus breaching said driver’s duty to the plaintiffs not to place them in a position whereby they might suffer injury.
“2. In that Dean held out to his passengers and to Marshall that it was safe for them to enter his cab.
“3. In that Dean failed to keep a lookout for vehicles using the lane of traffic he had stopped his cab in.”
The. District Judge clearly dictated into the record his finding of fact as to the cause of the collision with which we thoroughly agree, and adopt as our own, viz:
“The driver of the cab which was involved in the accident, a man by the name of Dean, testified he responded to a call and went to the Cozy Corner Restaurant, some thirty or forty feet from the corner, and that he blew his horn in order to attract attention to pick up passengers. Two passengers entered the cab, one Mandy Allen, and the other Mary Upkins.
“Mandy Allen, a woman of some seventy-seven years of age, is the mother of Mary Upkins, who is some fifty-two years of age and rather obese, weighing some two hundred fifty-five pounds.
“The driver of the cab could not reach the curb because of the fact that there were cars parked along the curb. At this particular spot on Claiborne Avenue the roadway on which the cab was headed, toward Canal Street, has some five lanes, two of which go to the right to go to Earhart Boulevard along the side of the operpass, and the three which climb the overpass.
“After the passengers got in, and while their friend, Whylon Marshall, as testified to by the driver of the cab, ran out of the restaurant to pay the driver, and while his head was inside of the cab and he was attempting to pay the driver the cab was hit from the rear by an automobile being driven by Virgil Downs. It was testified to by the *259 police officer, who was an eye witness to the accident, that he saw Virgil Downs pass the intersection of Melpomene Street, some fifty feet away; that he was driving at about twenty-five miles an hour at the time and that he could see if he kept on his course that he would run into the cab, and that he actually did run into the left rear of the cab. The impact drove the cab forward some six feet. It threw Marshall to the ground.”
A taxicab, like other common carriers, while not an insurer of its passengers, is held to the highest degree of care and, if guilty of any negligence, however slight, that causes injury to them, is responsible in damages therefor. Duane v. Toye Bros. Yellow Cab Co., La.App., 148 So.2d 451; Roth v. Lloyd S. Gaubert, Inc., La.App., 144 So.2d 675; Brown v. Gonzales, La.App., 77 So.2d 887.
Plaintiff contends that Defendant, by stopping its vehicle in a traffic lane, did breach a standard of care because it violated New Orleans traffic ordinance § 38-146 which prohibits standing or parking a vehicle more than 18 inches from a curb. Plowever, parking or standing a vehicle does not mean stopping it to discharge or receive passengers, rather it connotes stoppage with the intent to permit the vehicle to remain stationary for a reasonable length of time. McGehee v. Stevens, La.App., 15 So.2d 897, 899; 31 Words and Phrases (Per. Ed.) “Parking” pp. 153-156. Therefore, since there was no “parking” of the vehicle, there was no violation of the statute.
Moreover, we cannot see where the taxicab driver was guilty of the least negligence that contributed to the accident. The driver called for his passengers, stopped in the only safe place available in front of the Restaurant, to which he was summoned, in full view of any automobilist approaching from its rear who, proceeding in a lawful manner, could haye seen and avoided striking the taxicab. Unless the cab driver had stopped where he did, he could not have picked up his passengers. Neither they nor their fare-paying co-plaintiff from the Restaurant made any objection to the place where the cab had stopped.
The sole and proximate cause of the collision was the negligence of Defendant Downs in driving around the corner at 25 miles per hour into the parked taxicab, clearly visible, and which he could easily have passed to its left.
The suit against Defendant Downs, driver of the offending automobile, appears to have been abandoned. No preliminary or confirmation of default was entered against him, and no comment made in the briefs or oral arguments here for the reverse of the judgment in his favor.
The judgment of the lower court is affirmed; Plaintiffs to pay all taxable costs in both courts.
Affirmed.